**TEXAS EMPLOYMENT COMMISSION, Appellant,**

v.

**Eddie Lee TATES, Appellee.**

**No. 07–87–0282–CV.**

Court of Appeals of Texas, Amarillo.

March 17, 1989.

Rehearing Denied April 25, 1989.

Susan F. Eley, Asst. Atty. Gen., Austin, for appellant.

John B. Mallory, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

Texas Employment Commission denied unemployment benefits to Eddie Lee Tates upon the finding that he was discharged by his employer, Southwestern Electric Supply, for misconduct. On appeal by Tates, the district court, reciting its finding that there is not substantial evidence to support the decision of TEC, reversed TEC's decision. Appealing, TEC presents the single contention that substantial evidence supports its decision.[1] Agreeing, we reverse and render.

If TEC correctly decided that Tates was guilty of misconduct, he would not be entitled to receive unemployment benefits under the Texas Unemployment Compensation Act. This obtains by virtue of the Act's provision that:

> An individual shall be disqualified for benefits:
>
> \* \* \* \* \* \*
>
> (b) If the Commission finds he has been discharged for misconduct connected with his last work....

Tex.Rev.Civ.Stat.Ann. art. 5221b–3(b) (Vernon 1987).[2] In this regard, misconduct is defined in the Act in these words:

> "Misconduct" means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure orderly work and the safety of employees, but does not include an act of misconduct that is in response to an unconscionable act of an employer or superior.

Article 5221b–17(q).

In its trial de novo review of TEC's decision, the district court was required to determine from the evidence presented in trial whether there is substantial evidence to support TEC's decision. *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex.1986). Since the record of TEC's proceedings was admitted into evidence at trial, that record was a part of the evidence for consideration in the trial de novo review. *Texas Employment Com'n v. City of Houston*, 616 S.W.2d 255, 258 (Tex.Civ.App.—Houston [1st Dist.]), *writ ref'd n.r.e. per curiam*, 618 S.W.2d 329 (Tex.1981).

A summary of the evidence is that in 1984, Ken Jeffreys, president of Southwestern, hired Tates as a warehouse counterman. Jeffreys explained to Tates that the job would include "everything from unloading the trucks to sweeping the floor to waiting on customers." Jeffreys considered Tates quite capable of performing the job, but subsequently Tates's performance was not always satisfactory, particularly because his ability to fill orders and complete invoices was often deficient.

Keith Cole, who supervised Tates, counseled him on at least three occasions about his poor job performance. Following these occasions, Tates, according to Cole,

> would do better for 1 to 2 weeks and as soon as he felt the tension slack off, he slacked off and his problems would reappear. He either couldn't or wouldn't do correct work for any length of time. I'm of the opinion that he wouldn't because

---

1. The employer, Southwestern Electric Supply, was properly named as a party defendant in the trial court. Tex.Rev.Civ.Stat.Ann. art. 5221b–4(i) (Vernon Supp.1989). However, Southwestern did not file an answer in the trial court, and is not a party to this appeal.

2. A subsequent cite to an article is a reference to that article of the Texas Unemployment Compensation Act.

when I chewed him out he was OK for 1–2 weeks.

Most of the mistakes Tates made were, in the view of Jeffreys, favorable to the customers, and although Jeffreys did not feel that Tates intended any harm to the company, he considered that any error caused the business financial harm. Jeffreys stated that Cole wanted to terminate Tates for some time, but he would not permit it until customers called about errors, the last of which was that Tates could not supply a requested item that was in stock.

In reference to the counseling by Cole, Tates testified he explained the reason for his mistakes was that another employee was always interrupting him, and when he returned to work he "might have left a number off or forgot to do something." Cole talked to the other employee and the interruptions slowed down but did not stop.

In reaching its decision that Tates was discharged for misconduct connected with his work and will be disqualified for benefits, TEC acknowledged that "[i]nability to perform to an employer's satisfaction is not misconduct within the definition of the Act," but explained that Tates

> had exhibited the ability to perform satisfactorily, as he would do after each counseling. [Tates] however would allow his work to lapse into unsatisfactory work soon after each counseling. [Tates] had been warned he would be discharged if his work performance did not improve. [Tates] allowed his work to become dissatisfactory once again and was discharged. Based upon the evidence, [TEC] finds [Tates] was discharged for misconduct. [Tates] mismanaged his position of employment by repeated negligence which caused problems with customers. [Tates's] inattention or neglect which caused the errors did place in jeopardy the property of the employer, by causing ill will with customers which could lead to loss of business....

Notwithstanding, the trial court, admittedly reviewing the same evidence, reversed TEC's decision because it appeared to the court that the decision "was made without regard to the law as applicable, or the facts as applied to the law. And that the decision made was an unreasonable decision in this cause...." We disagree.

■ At the outset, we notice that Tates, in addressing the question of evidence, or lack of it, to show misconduct, misperceives the role of the trial court. He argues that the judge, in considering whether there was substantial evidence to support TEC's decision, "may surly [sic] give more weight to the testimony of [one] person ... as opposed to the testimony of [another]," that the judge "is free to assign the weight he is to give to evidence," and that "[t]he judge is also free to assign credibility when there are inconsistencies in the evidence presented by [TEC]."

To the contrary, under the principles of substantial evidence review, trial of fact issues by the district judge is avoided, *City of San Antonio v. Texas Water Commission*, 407 S.W.2d 752, 756 (Tex.1966), for the resolution of factual conflicts and ambiguities is the province of, in this instance, TEC. Thus, the trial court is concerned only with a question of law—the reasonableness of TEC's decision, not its correctness. Accordingly, the trial court may not substitute its judgment for that of TEC on controverted issues of fact. *Fireman's & Policemen's Civ. Serv. Com'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984).

■ Then, TEC's decision remains presumptively valid unless Tates shows that it was not supported by substantial evidence. Nevertheless, if, as it appeared to the trial court, TEC's decision was an unreasonable one made without regard to the law or the facts, the court was authorized to set the decision aside. *Mercer v. Ross*, 701 S.W.2d at 831. However, we hold that TEC's decision was made with regard to both the law and its resolution of the facts, and that the decision is supported by substantial evidence.

TEC found, in essence, that Tates had the ability to, and at times did, perform his work satisfactorily, but that he mismanaged his position by repeated negligence that placed in jeopardy his employer's property. Given these facts, TEC properly de-

# 293

termined that Tates's mismanagement of his position by such a degree of carelessness that placed in jeopardy his employer's property was misconduct under the Act. Art. 5221b–17(q); *Mercer v. Ross,* 701 S.W. 2d at 831. Based on the record before the trial court, it cannot reasonably be said that TEC's decision was not based on the law and supported by substantial evidence or was unreasonable. TEC's point of error is sustained.

Consequently, we reverse the judgment of the trial court, and render judgment affirming the decision of the Texas Employment Commission. Tex.R.App.P. 81(c).

### ON MOTION FOR REHEARING

Tates has filed a motion for rehearing in which he contends that we erred in (1) finding there was substantial evidence to support the finding of TEC that he was terminated for misconduct, (2) our application of the standard which the trial court is to use in the review of a TEC decision, and (3) overturning the judgment of the trial court. A consideration of the motion does not persuade us to add to the original address of these contentions or to change our original judgment, except in one respect.

The appeal of this cause was "taken from the decision of the trial court, in the same manner, as is provided in other civil cases." Article 5221b–4(i). Conformably, upon issuance of our judgment of reversal and rendition, we routinely ordered that Tates pay the costs occasioned by the appeal. Tex.R.App.P. 89. Now, however, TEC has brought to our attention the Texas Unemployment Compensation Act provision that: "No individual claiming benefits shall be charged fees of any kind in any proceeding under this Act by ... any court or any officer thereof." Article 5221b–13(b).

Accordingly, and to reflect a proper order respecting costs occasioned by the appeal, our 17 March 1989 judgment is set aside, the judgment of the trial court is reversed, and judgment is here rendered affirming the decision of the Texas Employment Commission. Because TEC is the only party to this appeal not exempt from the payment of costs, the costs occasioned by the appeal are taxed against the Texas Employment Commission. Tex.R.App.P. 89. *See, also, International Union of Elec., Etc. v. Texas Emp. Com.,* 346 S.W. 2d 649, 660 (Tex.Civ.App.—Texarkana), *rev'd on other grounds,* 163 Tex. 135, 352 S.W.2d 252 (1961).

The motion for rehearing is overruled.