TEXAS EMPLOYMENT
COMMISSION, Appellant,

v.

Luis A. TORRES, Appellee.

No. 13-90-075-CV.

Court of Appeals of Texas,
Corpus Christi.

Jan. 24, 1991.

Jim Mattox, Atty. Gen., Sylvia F. Hardman, Asst. Atty. Gen., Mary F. Keller, Executive Asst. Atty. Gen., Harriet D. Burke, Asst. Atty. Gen., Chief, Taxation Div., Austin, for appellant.

Baltazar Coronado, Texas Rural Legal Aid, Inc., Harlingen, for appellee.

Before DORSEY, KENNEDY and BENAVICDES, JJ.

## OPINION

DORSEY, Justice.

After the Texas Employment Commission (TEC) denied Torres unemployment benefits, he appealed by filing a petition in the district court. Following a bench trial, the trial court reversed TEC and ordered compensation. TEC raises a sole point of error by which it contends that the trial court erred in finding that the TEC decision disqualifying Torres from receiving benefits was arbitrary, made without regard to the facts or law, and not reasonably supported by substantial evidence. We affirm the trial court's judgment.

Under TEX.REV.CIV.STAT.ANN. art. 5221b-4(i) (Vernon Supp.1991), a trial court applies the substantial evidence test in a trial de novo to review a TEC decision. *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986). The party challenging TEC's ruling has the burden to show that substantial evidence did not support it. *Mercer*, 701 S.W.2d at 831. A reviewing court may not set aside a TEC decision merely because it would have reached a different conclusion. It may do so only if it finds that TEC decided without regard to the law or the facts and that the decision was therefore unreasonable, arbitrary, or capricious. *Mercer*, 701 S.W.2d at 831; *Texas Employment Comm'n v. Holberg*, 440 S.W.2d 38, 40 (Tex.1969).

TEC claims Torres is disqualified for benefits under art. 5221b-3(b) (Vernon Supp.1991) because he was discharged for misconduct. Misconduct is defined by art. 5221b-17(q) (Vernon 1987), which states:

'Misconduct' means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, intentional wrongdoing or malfeasance, intentional violation of law, or violation of a policy or rule adopted to ensure orderly work and the safety of employees, but does not include an act of misconduct that is in response to an unconscionable act of an employer or superior.

Torres was promoted to cashier at a McCoy's Building Supply Center in August or September, 1986, and manager Mario Villarreal fired him on March 14, 1987. Villarreal testified that he fired Torres for making three pricing errors within a short period of time, in accord with a new company policy which he had announced in late February, 1987. On March 6, 1987, Torres charged $6.19 for each of three items priced at $7.49, losing $3.90 for McCoy's. On March 9, 1987, Torres charged $6.99 for an $8.59 item, losing $1.60 for McCoy's. On March 14, 1987, Torres charged $114.65 for a water heater which was priced at $149.95. Since it discovered the error before loading the water heater for the customer, McCoy's did not actually lose the $35.30.

TEC argues that misconduct here involved "neglect that places in jeopardy the lives or property of others," with the property involved being that of his employer. Torres argues that he was unable to perform to the employer's standards and that the neglect constituting misconduct under the statute must be intentional. TEC does not claim that Torres' neglect was intentional, but that he jeopardized $40.80 cash of his employer, actually losing $5.50.

The decision of the Texas Supreme Court in *Mercer* and its construction of the statutory definition of misconduct is determinative. Mercer was a travel agent whose employer lost a large commercial account because of her errors. She booked tickets incorrectly, prepared them with the wrong names and destinations, and gave out airline schedules before they became effec-

tive. TEC determined that Mercer's actions did not constitute mismanagement, but the trial and appellate courts disagreed. The Supreme Court states that she was unable to do her job to the employer's satisfaction, but upholds TEC's decision to award benefits. It reasons:

Article 5221b–17(q) delineates a number of acts which may be determined to be misconduct, including mismanagement and placing in jeopardy the property of others. TEC correctly determined that mismanagement, not misconduct in general, requires intent, or such a degree of carelessness as to evidence a disregard for the consequences, whether manifested through action or inaction. *If the legislature had intended that mere inability to perform duties required disqualification from benefits it could have stated so.* Any employee who is unable to do his job to the satisfaction of his employer lowers profits and to the extent of the time and materials needed to correct mistakes, places in jeopardy the property of his employer or the customer; however, that is not the standard. Mere inconvenience or additional cost incurred by the employer or his customers is not applicable, and TEC is not required to address it.

TEC's standard of misconduct was proper. TEC found there had been no mismanagement and there is no evidence that Mercer's conduct placed the lives or property of others in jeopardy. (Emphasis added.)

*Mercer*, 701 S.W.2d at 831. Thus, the Supreme Court construed mismanagement to include "neglect that places in jeopardy" the property of others, rather than "neglect" being merely another type of misconduct. The court further said that the neglect constituting mismanagement requires intent or a degree of carelessness that shows disregard for the consequences.

In *Texas Employment Comm'n v. Tates*, 769 S.W.2d 290 (Tex.App.—Amarillo 1989, no writ), TEC had denied benefits to Tates, a former warehouse counterman, the trial court reversed and awarded benefits, and the appellate court then reversed and again denied benefits. In *Tates*, the court clearly read the mismanagement section to include the language about jeopardy of property, and found that substantial evidence supported a finding of intent. We are persuaded that this is the correct reading of the statute.

In *Tates*, the evidence of intent was that Tates had been reprimanded for poor performance on at least three occasions, and had always improved his performance temporarily in response. Thus TEC concluded that he was able to perform satisfactorily, but was negligent ("careless"). Benefits were denied for mismanagement of a position of employment.

The issue here is whether the trial court erred in failing to find substantial evidence in support of the Commission's denial of benefits because of misconduct through mismanagement of a position of employment by neglect.

The trial court found that TEC had applied an improper standard and, applying the correct standard, awarded benefits. Torres had been a cashier for over six months. He made two pricing errors when he started as cashier. No errors were documented for the next six months or so. After the manager announced the policy about pricing errors, he made the errors described above. Torres testified that a cashier is under pressure to work quickly as well as accurately. He testified that many prices, including sale prices, are listed in a big book instead of being marked on the item. The book is a continuous list of stock numbers and prices with no double spacing. He believed the water heater was on sale, but it turned out that the sale price did not apply to that model. He testified that all of the cashiers made mistakes. No one testified that the errors were deliberate, and Torres testified that he did not intentionally use any incorrect prices.

When the reason for the discharge is neglect that endangers property of the employer, the neglect must be intentional or must show such carelessness that it indicates a disregard for the consequences. Mere failure to perform the tasks to the satisfaction of the employer, without more,

does not constitute misconduct which disqualifies an employee from benefits.

The purpose of the statute is to provide benefits for the unemployed and as such it is to be construed liberally in favor of the award of benefits. *See Meggs v. Texas Unemployment Compensation Comm'n*, 234 S.W.2d 453, 454 (Tex.Civ. App.—Fort Worth 1950, writ ref'd). The award of unemployment benefits is not to be confused with the right of an employer to fire an at-will employee without excuse, which doctrine has recently been reaffirmed in Texas with only limited exceptions. Unemployment benefits are due discharged employees unless a statutory exception to benefits is met, and the exceptions to compensation described in the statute are to be construed narrowly.

We hold that the trial court did not err in finding that TEC misapplied the law and that under the correct standard, there was not substantial evidence to support a decision that Torres' conduct constituted mismanagement of a position of employment by intentional neglect or by carelessness showing a disregard of the consequences.

We overrule TEC's point of error and AFFIRM the trial court's judgment.