LEVELLAND INDEPENDENT SCHOOL DISTRICT, Appellant,

v.

Emilio M. CONTRERAS, Appellee.

No. 07-92-0315-CV.

Court of Appeals of Texas, Amarillo.

July 22, 1993.

Rehearing Overruled Dec. 28, 1993.

See also, 850 S.W.2d 229.

---

Hook & Husen, Richard L. Husen, Levelland, for appellant.

Donald E. Cummings, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

POFF, Justice.

Emilio M. Contreras, appellee, was terminated as supervisor of custodians for the Levelland Independent School District after 21 years of employment. The Texas Employment Commission (TEC) denied his claim for unemployment benefits. Contreras commenced an action in 286th District Court challenging the TEC's final decision denying his claim. The trial court overturned the decision of the TEC and awarded benefits to Contreras. Levelland Independent School District (LISD), appellant, appeals from the trial court's judgment.

LISD brings two points of error. In its first point of error, LISD contends the trial court erred in rendering judgment for Contreras because there was substantial evidence to support TEC's denial of unemployment benefits. In its second point of error, LISD argues that the court erred in refusing to admit the entire record of the TEC into evidence. We will overrule both points of error and affirm the judgment of the trial court.

Judicial review of a final decision of the Texas Employment Commission is available pursuant to Tex.Rev.Civ.Stat.Ann. art. 5221b–4(i) (Vernon Supp.1993). Such a review requires a trial de novo at which the reviewing court is to determine whether substantial evidence exists to support the TEC ruling. *Mercer v. Ross,* 701 S.W.2d 830, 831 (Tex.1986); *Madisonville Consol. Indep. Sch. Dist. v. Texas Employment Comm'n,* 821 S.W.2d 310, 311 (Tex.App.—Corpus Christi 1991, writ denied). In making its determination, the reviewing court must look *only to the evidence presented at trial* and not to the record of the TEC. *Mercer v. Ross,* 701 S.W.2d at 831; *Mary Lee Found. v. Texas Employment Comm'n,* 817 S.W.2d 725, 727 (Tex.App.—Texarkana 1991, no writ).

Before determining whether substantial evidence existed to support the TEC's ruling, we will consider whether the trial court erred in refusing to admit the entire record of the TEC into evidence. LISD argues that the entire TEC record should have been admit-

ted pursuant to Tex.R.Civ.Evid. 803(8), which is the public records and reports exception to the hearsay rule. We do not agree.

The evidence heard by the TEC is not per se admissible at trial before the reviewing court. *Mary Lee Found. v. Texas Employment Comm'n,* 817 S.W.2d at 727. Whether the record of the TEC is admissible depends upon its own merits under the Texas Rules of Civil Evidence. *Id.* The public records exception to the hearsay rule does not necessarily permit the introduction of the entire TEC record into evidence before the reviewing court. For example, hearsay statements within the TEC record will not be saved from exclusion by the public records exception. *Id.* at 728. While fact findings made by the TEC and contained in the TEC record do fit within the public records exception, such findings are not relevant on a trial de novo and are therefore inadmissible. *Id.* "If the fact findings of the TEC were admissible proof of their own truth in a trial *de novo,* the substantial evidence review would be meaningless because the TEC could bootstrap itself to substantial evidence in every case merely by finding what it needed to prove." *Id.*

In the present case, the trial court declined to admit the entire TEC record because, among other reasons, parts of the record contained fact findings by the TEC. In light of the teachings of *Mary Lee Foundation v. Texas Employment Commission,* the trial court did not err in refusing to admit the entire TEC record. We need not address whether every particular page of the record the trial court refused to admit into evidence was properly excluded because LISD's point of error complains only that the trial court erred in refusing to admit the entire TEC record. Point of error two is overruled.

We now must determine whether the evidence presented at trial constitutes substantial evidence in support of the TEC's decision to deny Contreras unemployment benefits. TEC denied Contreras unemployment benefits pursuant to Tex.Rev.Civ.Stat.Ann. art. 5221b–3(b) (Vernon Supp.1993), because it found he was discharged from his employ-

ment for misconduct on the job. Misconduct is defined as

> mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, intentional wrongdoing or malfeasance, intentional violation of a law, or *violation of a policy or rule* adopted to ensure orderly work and the safety of employees, but does not include an act of misconduct that is in response to an unconscionable act of an employer or superior.

Tex.Rev.Civ.Stat.Ann. art. 5221b–17(q) (Vernon 1987) (emphasis added).

From the portions of the TEC record admitted into evidence, the trial court learned that Contreras was fired for misconduct connected with his work. Contreras was said to have been discharged for violation of company rules and policies. If Contreras did violate LISD rules and policies, then he would have engaged in misconduct precluding him from receiving employment benefits.

The admitted portions of the TEC record revealed specifically that Contreras was requested to retire—and later fired—for the following three reasons:

> * Being seen on a regular basis at an unauthorized address during work hours.
> * Conduct unbecoming and unprofessional of a school employee while on duty.
> * Unauthorized use of a school vehicle during work hours.

The admitted portions of the TEC record also showed that Richard Sweet, LISD's Business Manager, had given Contreras several warnings over a period of several years.

Contreras was the only witness at trial. He testified that Sweet fired him for driving a school district pickup to the home of a local single lady, Rosa, and spending time there. Contreras admitted to being at Rosa's home at various times of day, spending most nights at her home, and "basically living there." Contreras was divorced at the time.

Contreras testified that the first time Sweet told him not to go to Rosa's home was the day he was told he was going to be fired if he did not resign. According to Contreras, he was on call 24 hours per day and did not have any definite hours he had to be at work.

He was also permitted to drive the vehicle 24 hours per day every day of the week. The only place Contreras had been instructed not to go with the pickup was a local country club because liquor was sold there and Sweet thought the presence of the pickup at the country club would "look bad."

Contreras testified that he hired Rosa in 1987 to work as a custodian. At that time, appellee and Sweet had a discussion concerning Rosa. Contreras described the conversation as follows:

> Okay, at the time Mr. Sweet was out of town and I hired her, you know, for I needed a custodian, so I wanted to go on and give her a job. I put her to work at the South Elementary. When he got back, he called me to the office and told me that I had hired a lady to work at the school? I say, yes. He said, as I understand it in the past, you had relation with her. I say, yes, sir. He said, well, I want to discuss with you about her. He said, I want you to treat her as a custodian, as a worker, and whatever you do after hours is none of my business, but make sure you don't bother her during the working hours.

Contreras attested that Sweet did not instruct him not to go to Rosa's house or that he was not to have a relationship with her. Contreras never received a written warning of any kind from Sweet or anyone else employed by LISD. According to Contreras, he never went to see Rosa when she was supposed to be working. In fact, at the time Contreras was asked to resign, Rosa was not working because of an injury suffered on the job. Contreras denied that Sweet had warned him several times regarding Rosa or that he and Sweet had discussed Rosa several times.

"The action of the TEC carries a presumption of validity, and the party seeking to set aside the agency's decision has the burden of showing that it was not supported by substantial evidence." *Mercer v. Ross,* 701 S.W.2d at 831; *Mary Lee Found. v. Texas Employment Comm'n,* 817 S.W.2d at 727. In other words, the party challenging the TEC's decision must show that the decision was arbitrary, unreasonable, capricious

478

and was made without regard to the facts or law. *Brown v. Texas Employment Comm'n,* 801 S.W.2d 5, 7 (Tex.App.—Houston [14th Dist.] 1990, writ denied). A reviewing court may not set aside a decision of the TEC merely because it would have reached a different conclusion. *Mercer v. Ross,* 701 S.W.2d at 831; *Texas Employment Comm'n v. Torres,* 804 S.W.2d 213, 214 (Tex.App.—Corpus Christi 1991, no writ). "Although substantial evidence must be more than a mere scintilla, it need not be a preponderance." *Olivarez v. Aluminum Corp. of Am.,* 693 S.W.2d 931, 932 (Tex.1985). In fact, the evidence may be substantial even though it greatly preponderates the other way. *Id.* Whether there is substantial evidence to support the TEC's decision is purely a matter of law. *Madisonville Consol. Indep. Sch. Dist. v. Texas Employment Comm'n,* 821 S.W.2d at 314.

 Looking only to the record presented at trial, the evidence heavily preponderates in favor of Contreras' claim that he was never told not to engage in the behavior for which he was fired and which formed the basis of the TEC's determination that he had engaged in misconduct. While the admitted portion of the TEC record shows that Sweet did give Contreras several warnings about the conditions causing his discharge, the admitted portions of the TEC record offer no specifics as to the time, place or content of the warnings. In our view, the record presented at trial *contains no more* than a scintilla of evidence in support of the TEC ruling denying unemployment benefits to Contreras. We find that Contreras met his burden of showing that the TEC's decision was not supported by substantial evidence. The trial court acted properly in rendering judgment for Contreras. Point of error one is overruled.

The judgment of the trial court is affirmed.