**TEXAS EMPLOYMENT COMMISSION,**
Appellant,

v.

**Clay MORGAN, Appellee.**

No. 01–93–00324–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 17, 1994.

Dan Morales, Will Pryor, Mary F. Keller, Lucy Glover, Robert J. West, Austin, TX, for appellant.

Phillip Brantley, Houston, TX, for appellees.

Before DUGGAN, HEDGES and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

The Texas Employment Commission (TEC) appeals the reversal of its decision that Clay Morgan be denied unemployment benefits because he was guilty of misconduct for refusing to work. We affirm.

### Fact Summary

Clay Morgan worked as a truck driver for Leprino Foods from 1989 through 1991. In November 1991, he hurt his right elbow while on the job. Leprino sent Morgan to Dallas to see the company doctor who diagnosed him with tendonitis and gave him a Cortisone shot. Morgan was then able to work full duty until late March. When the Cortisone wore off, the pain returned. Morgan notified the workers' compensation insurer of the injury and was given a list of doctors. He selected Dr. John True. On March 27, 1991, Dr. True told him he had tendonitis in his right elbow. Dr. True reported that he anticipated Morgan would make a full recovery within three to six months if Morgan avoided repetitive use of his right arm. He recommended Morgan change duties to avoid re-injury and said he should refrain from pushing, pulling or lifting more than 20 pounds with his palm down. Morgan saw Dr. True in April, May, and June, and his tendonitis had not improved. On Morgan's medical charts for those visits, which were introduced at trial, Dr. True

recommended that Morgan get physical therapy. On Morgan last doctor's visit, July 29, 1991, Dr. True told Morgan he could return to full duty. Dr. True noted on the report that Morgan should change his occupation if he could not perform his job. At the TEC hearing, Morgan testified Dr. True told him he had chronic tendonitis, but that his insurance had "maxed out," and, therefore, Dr. True would have to release him for full duty.

Morgan returned to work with Leprino on July 31, 1991. On the fifth day back on the job, he re-injured his elbow. Leprino suspended him without pay for a week while the company decided what to do. At the TEC hearing, Morgan testified his manager told him to have his doctor verify he could not work full duty. Dr. True declined to see him, and Morgan testified in the trial court that he was unable to go to another doctor because his workers' compensation claim had not been resolved and his lawyer and the carrier could not agree on another doctor. On August 19, 1991, Morgan met with his supervisor who told him to report to work the next day or he would be fired.[1] When he reported for work, his supervisor gave him a route and a truck. Morgan said he told his supervisor he would need help unloading because of his arm. Morgan offered to do clerical work instead, but his supervisor told him he was fired.

Morgan sought unemployment benefits from the TEC. The TEC held an administrative hearing and found Morgan had refused to do the work assigned to him and was disqualified from receiving unemployment. The findings of fact entered by the TEC after the administrative hearing were:

> It is evident that the claimant had tendonitis, but the claimant has not presented medically verifiable evidence that he was not able to perform his normal duties after his full release for work on July 29, 1991. Accordingly, the claimant's refusal to perform his normal duties constitutes misconduct connected with the work because the claimant mismanaged his position of employment and the claimant is subject to disqualification under Section 5(b) of the Act.

Morgan appealed the TEC's decision to the district court, which set it aside and held Morgan was not disqualified from receiving unemployment compensation benefits. TEC appeals from the district court's judgment.

## Is refusing to work misconduct?

In its sole point of error, TEC contends the trial court erred in reversing its decision, which is supported by substantial evidence. The commission contends it disqualified Morgan from receiving unemployment benefits because Morgan was discharged for misconduct—refusing to do the job assigned to him.

■ Review of a TEC decision requires a trial de novo with substantial evidence review. *Nuernberg v. Texas Employment Comm'n*, 858 S.W.2d 364, 365 (Tex.1993); *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986). Under substantial evidence/de novo review, the reviewing court conducts an evidentiary hearing for the limited purpose of determining whether at the time the questioned order was entered there then existed sufficient facts to justify the agency's order. *Board of Trustees v. Firemen's Pension Comm'r*, 808 S.W.2d 608, 612 (Tex.App.— Austin 1991, no writ); *see also Gerst v. Nixon*, 411 S.W.2d 350, 354 (Tex.1966). In reviewing an agency's decision, the reviewing court must look to the evidence presented in trial and not the agency record by itself. *Mercer*, 701 S.W.2d at 831; *see Nuernberg*, 858 S.W.2d at 365.

■ The action of the TEC carries a presumption of validity, and the party seeking to set aside its decision has the burden of showing that it was not supported by substantial evidence. *Mercer*, 701 S.W.2d at 831. Substantial evidence is more than a mere scintilla, but less than is required to sustain a verdict being attacked as against the great weight and preponderance of the evidence. *Mollinedo v. Texas Employment Comm'n*, 662 S.W.2d 732, 735 (Tex.App.— Houston [1st Dist.] 1983, no writ). The re-

---

1. At the TEC hearing, Morgan testified his supervisor had told him he would be riding with him to help him. The supervisor, however, testified at that hearing he was going to ride with Morgan to evaluate his performance, but would not assist.

viewing court may not set aside a decision of the TEC merely because it would have reached a different conclusion. *Mercer*, 701 S.W.2d at 831. It may do so only if it finds the TEC's decision to have been made without regard to the law or the facts and, therefore is unreasonable, arbitrary, or capricious. *Id.*

In its trial de novo review of the TEC's decision, the district court was required to determine from the evidence presented at trial whether there was substantial evidence to support the TEC's decision. *Mercer*, 701 S.W.2d at 831. The record of the TEC's proceedings, which was admitted into evidence at trial without objection, was a part of the evidence considered by the trial court in its de novo review. *Haas v. Texas Employment Comm'n*, 683 S.W.2d 462, 464 (Tex.App.—Dallas 1984, no writ). Because the evidence from both hearings is contained in this record, we review both to determine whether substantial evidence supports the TEC's ruling.[2]

If Morgan is guilty of misconduct, he is not entitled to unemployment benefits under TEX.LAB.CODE § 207.044 (Vernon Pamph. 1994),[3] which provides:

An individual shall be disqualified for benefits:

(b) If the commission finds he has been discharged for misconduct connected with his last work.

The TEX.LAB.CODE § 201.012 defines misconduct as:

Mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure orderly work and the safety of employees. The term "misconduct" does not include an act in response to an unconscionable act of an employer or superior.

TEX.LAB.CODE § 201.012 (Vernon Pamph. 1994).[4]

We are asked to decide whether Morgan's refusal to work meets the definition of misconduct. The case law in this area provides no clear definition of what constitutes misconduct. In *Mercer* the Supreme Court held that a travel agent who did not perform her job to her employer's satisfaction and was fired did not mismanage her position and the TEC properly awarded her unemployment benefits. *Mercer*, 701 S.W.2d at 831. The court reasoned:

TEC correctly determined that mismanagement, not misconduct in general, requires intent or such a degree of carelessness as to evidence a disregard of the consequences, whether manifested through action or inaction. If the legislature had intended that mere inability to perform duties required disqualification from benefits it could have said so. Any employee who is unable to do his job to the satisfaction of his employer lowers profits and to the extent of the time and materials needed to correct mistakes, places in jeopardy the property of his employer or the customer; however that is not the standard. Mere inconvenience or additional cost to the employer or his customers is not applicable; and TEC is not required to address it.

*Id.*

In *Levelland Independent School District v. Contreras*, 865 S.W.2d 474, 476 (Tex. App.—Amarillo 1993, writ requested), the Amarillo Court of Appeals affirmed the trial court's reversal of a TEC finding of substantial evidence. In *Levelland*, the school dis-

**2.** The statute in effect when this case was heard was TEX.REV.CIV.STAT. art. 5221b–4(i), which was codified as § 212.202. effective September 1, 1993. *See* Act of May 22, 1993, 73rd Leg., R.S., ch. 269, 1993 Tex.Gen.Laws 990.

**3.** We refer to the new Texas Labor Code, which codifies the statute in effect at the time of this case, TEX.REV.CIV.STAT. art. 5221b–3(b). TEX.REV.CIV.STAT. art. 5221b–3(b) was repealed and codified effective September 1, 1993, with no sub-

stantial change in the law. *See* TEX.GOV'T CODE § 323.007(b) (Vernon 1988).

**4.** We refer to the new Texas Labor Code in which the statute in effect at the time of this case, TEX.REV.CIV.STAT. art. 5221b–17(q), has been codified. TEX.REV.CIV.STAT. art. 5221b–17(q) was repealed and codified in September 1, 1993, with no substantial change in the law. *See* TEX.GOV'T CODE § 323.007(b) (Vernon 1988).

trict supervisor of custodians was fired for being seen at a girlfriend's house during working hours, acting unprofessionally, and for using a district vehicle without authority. *Id.* at 477. The appellate court upheld the trial court in finding there was no substantial evidence in the record to support the denial of unemployment benefits. The court reasoned that the record lacked specifics about warnings given the employee and whether he knew his behavior was misconduct. *Id.* at 478. In *Texas Employment Comm'n v. Tates,* 769 S.W.2d 290, 291 (Tex.App.—Amarillo 1989, no writ), another case from the Amarillo Court of Appeals, the court held there was substantial evidence to support a finding of misconduct when the employee was told three times about his poor job performance. After each warning, the employee performed better for two to three weeks, but then would slack off again. The court reasoned that repeated negligence in performing his duties was mismanagement of his position and denied him benefits. *Id.* at 293.

In *Texas Employment Commission v. Torres,* 804 S.W.2d 213, 215–16 (Tex.App.—Corpus Christi 1991, no writ), the Corpus Christi Court of Appeals held a cashier's misreading of a pricing book, which resulted in an under charge, was not misconduct because it was not intentional or done with such carelessness that it indicated a disregard for the consequences.

In *Haas,* 683 S.W.2d at 465, the Dallas Court of Appeals held there was substantial evidence to deny unemployment benefits to a store employee who discounted items and sold alcohol to a customer who did not have proper identification. The court reasoned that the employee's acts met the definition of misconduct because he violated company policy regarding proper identification needed for the sale of alcohol, and his discounting of certain items several times was mismanagement of his position. *Id.*

■ In this case, Morgan was diagnosed with tendonitis. His doctor authorized light duty while the arm healed. When Morgan's workers' compensation benefits ran out, the doctor released him for full duty and refused to see him again. Morgan went back to work, but re-injured his arm. He could not present medically verifiable evidence of his injury because his doctor refused to see him, and he could not see another doctor.

Morgan was told to report to work, which he did. He was assigned a truck and given a route. Morgan asked his supervisor for someone to help unload the truck, but his supervisor told him he could not give him anyone. Morgan then offered to do clerical work. Instead, he was fired.

There were no repeated warnings of poor job performance or repeated violations of company policy. In fact, evidence in the record shows Morgan has been commended for his work. Morgan was not guilty of misconduct as defined in the statute—mismanagement through inaction or neglect that put the lives or property in jeopardy, violate a law, policy, or rule. He did not mismanage his position, as defined by the Supreme Court in *Mercer,* through carelessness or by disregarding the consequences of his actions.

We hold he did not mismanage his position by telling his supervisor he could not do the work required of him without help. We overrule point of error one.

We affirm the judgment of the trial court.