

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00381-CR

JUAN MARTIN BERNAL A/K/A                                    APPELLANT
JUAN M. BERNAL

V.

THE STATE OF TEXAS                                               STATE

----------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
### TRIAL COURT NO. CR12395

----------

## MEMORANDUM OPINION[1]

----------

Appellant Juan Martin Bernal a/k/a Juan M. Bernal appeals from his conviction for driving while intoxicated (DWI) and twenty-year sentence. In three issues, he asserts his trial counsel rendered ineffective assistance of counsel. Finding no record evidence of deficient performance, we overrule Bernal's issues and affirm the trial court's judgment.

---
[1]See Tex. R. App. P. 47.4.

# I. BACKGROUND

## A. FACTS

During the early morning hours of December 2, 2012, Officer Patrick Garrett Wiginton of the Granbury Police Department was patrolling an area near Wild Country, a local bar, "to deter people from leaving the bar there intoxicated and that kind of thing."[2]  Wiginton saw a Chevy Malibu stop at a stop sign near the bar at a "T" intersection[3] and remain stationary for "several seconds" although there was little traffic in the area.  "[A]t least one vehicle" was behind the Malibu "waiting to approach the stop sign" while the Malibu remained stationary.  The driver of the Malibu eventually turned on the right turn signal and turned right onto a highway.  Wiginton turned on his dashboard camera and followed the Malibu.

Wiginton saw the Malibu "speed up and slow down," driving between 45 and 50 miles per hour in a 55-mile-per-hour zone.  The Malibu also "drifted back and forth . . . in its lane of traffic . . . from the white fog light line on the side, back to the dotted line in the middle."  These actions, the prior delayed turn at the "T" intersection, and the fact that the Malibu was in the area of a bar in the early morning hours made Wiginton "suspicious that the driver may be intoxicated."

[2]Wiginton was on routine patrol and was not part of any "DWI interdiction," which is a specific type of patrol that solely focuses on enforcing DWI laws.

[3]This intersection included a dead end and, thus, required drivers to turn either left or right at the stop sign.  The Malibu did not have a turn signal activated while it remained stopped.

*See* Tex. Transp. Code Ann. § 545.104(b) (West 2011) (requiring driver to signal a turn at least 100 feet before the intended turn), § 545.363(a) (West 2011) (prohibiting driver from "imped[ing] the normal and reasonable movement of traffic").

Wiginton turned on his patrol lights and pulled the Malibu over. Wiginton approached the driver of the Malibu, Bernal, and saw an open container of alcohol in the center console. Bernal did not have a driver's license but gave Wiginton his identification card. Wiginton, believing he was "justified to further investigate the intoxication of the driver," asked Bernal to get out of the car and began field-sobriety tests. The three tests included eighteen clues suggesting intoxication, of which Bernal exhibited fourteen. Additionally, Wiginton smelled alcohol "emitting from [Bernal's] person" and noted that his speech was "somewhat slurred."

Wiginton arrested Bernal for DWI. Wiginton placed Bernal in handcuffs, stood Bernal at the hood of his patrol car, and read Bernal the required warnings before Wiginton requested a blood specimen to determine the alcohol concentration in Bernal's body. *See id.* § 724.015 (West Supp. 2014). Wiginton read the warnings but also placed a written copy of the warnings on a clipboard on the hood of his patrol car. *See id.* Bernal turned his back to the patrol car and repeatedly tried to "wander off." At one point, Wiginton had to hold the clipboard in one hand and hold Bernal's shirt sleeve with his other hand to keep Bernal in place. Bernal refused to provide a blood specimen. A dispatch officer

3

then informed Wiginton that Bernal had two previous convictions for driving while intoxicated.

Based on a statute requiring a police officer to take a breath or blood specimen if an arrestee refuses the officer's request to supply a specimen and if the officer has credible information that the arrestee has twice previously been convicted of DWI, Wiginton believed that obtaining a warrant before taking Bernal's blood specimen was not necessary. *See id.* § 724.012(b)(3)(B) (West 2011). Therefore, Wiginton transported Bernal to a hospital to get a blood specimen, which subsequently showed Bernal had a blood-alcohol content of .232, which is three times above the legal limit. *See* Tex. Penal Code Ann. § 49.01(2)(B) (West 2011).

## B. PROCEDURE

A grand jury indicted Bernal with DWI and included two offense-enhancement paragraphs, which alleged that Bernal previously had been convicted of DWI in 2003 and 2010. *See id.* §§ 49.04(a), 49.09(b) (West Supp. 2014). The indictment also included a punishment-enhancement paragraph, which alleged that Bernal had previously been convicted of the felony offense of criminal mischief in 2006. *See id.* § 12.42(a) (West Supp. 2014). As a result of the offense- and punishment-enhancement paragraphs, Bernal was subject to the punishment range applicable to a second-degree felony if convicted. *See id.* §§ 12.42(a), 49.09(b).

4

Before trial, Bernal's counsel filed two pretrial motions—a motion to modify bond restrictions, which was granted, and a motion to quash the indictment, which asserted that the criminal-mischief conviction listed in the punishment-enhancement paragraph was void. The trial court did not expressly rule on the motion to quash, and the record does not reflect that trial counsel timely presented it to the trial court. *See* Tex. Code Crim. Proc. Ann. art. 1.14(b) (West 2005); *Chunn v. State*, 821 S.W.2d 718, 720 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd), *cert. denied*, 506 U.S. 870 (1992). Before trial, however, the State notified Bernal that it would seek to enhance his punishment under section 12.42 based on Bernal's 2006 felony conviction for injury to a child, which apparently rendered the prior motion to quash moot.[4]

After Bernal pleaded not guilty to the indictment, a jury heard the above evidence mainly through Wiginton's testimony and the video from Wiginton's dashboard camera. Bernal's trial counsel cross-examined Wiginton and questioned why he pulled Bernal over, i.e., Wiginton's reasonable suspicion, and whether Bernal appeared intoxicated based on Wiginton's observations and Bernal's performance on the field-sobriety tests, i.e., Wiginton's probable cause

---

[4]At punishment, the State proceeded solely on Bernal's 2006 conviction for injury to a child to enhance his punishment under section 12.42. Bernal objected to the State's notice of enhancement as untimely, which the trial court overruled. Bernal pleaded true to this punishment-enhancement allegation. *See Brooks v. State*, 957 S.W.2d 30, 33–34 (Tex. Crim. App. 1997) (holding punishment-enhancement paragraph need not be alleged in the indictment but must be raised by the State "in some form").

5

to arrest Bernal. Under further cross-examination, Wiginton admitted that he could have asked a magistrate to issue a warrant to compel Bernal's blood specimen and that there was no exigent circumstance excusing the warrant requirement. He explained that he would have sought a warrant for the blood specimen if Bernal had not had two prior DWI convictions. *See* Tex. Transp. Code Ann. §§ 724.011, 724.012(b)(3)(B), 724.013 (West 2011). The jury found Bernal guilty of DWI with two prior DWI convictions. *See* Tex. Penal Code Ann. § 49.09(b). Based on Bernal's pretrial election to have the jury assess his punishment, *see* Tex. Code Crim. Proc. Ann. art. 37.07, § 2(b) (West Supp. 2014), the jury found the punishment-enhancement notice true based on Bernal's plea of true and assessed his punishment at twenty years' confinement, which was the maximum term of confinement available. *See* Tex. Penal Code Ann. § 12.33(a) (West 2011), § 12.42(a).

Bernal was appointed an attorney for appeal who filed a motion for new trial, arguing that "[t]he punishment in the cause is contrary to the law and the evidence." *See* Tex. R. App. P. 21.3. The trial court denied the motion after a nonevidentiary hearing. Bernal now appeals and raises ineffective assistance of trial counsel.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARD OF REVIEW

The test to determine the effectiveness of counsel requires Bernal to show by a preponderance of the evidence that (1) counsel's representation fell below

6

the standard of prevailing professional norms and (2) there is a reasonable probability that, but for these unprofessional errors, the outcome of the proceeding would have been different.[5] *Strickland v. Washington*, 466 U.S. 668, 687–89, 104 S. Ct. 2052, 2064–65 (1984); *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592–93; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). This statement is true with regard to the deficient-performance prong of the inquiry when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Thompson*, 9 S.W.3d at 813. It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be

---

[5]Bernal seems to argue that this second prong equates to an egregious-harm inquiry similar to the harm required for unpreserved jury-charge error. *See* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006). However, because Bernal is raising an ineffective-assistance claim—not a claim that the jury charge was not objected to yet erroneous—we are bound by the different-outcome standard dictated by *Strickland*.

afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

## B. INACTION REGARDING EVIDENCE SEIZED WITHOUT A WARRANT

In his first issue, Bernal argues that trial counsel was deficient for failing to recognize the import of recent changes in DWI law and for failing to seek to suppress the blood-alcohol evidence, which was seized without a warrant and in the absence of exigent circumstances. This claim is based on the effect of *Missouri v. McNeely*, a United States Supreme Court case decided three months before Bernal's trial that held that the natural dissipation of alcohol in the bloodstream does not present a per se exigent circumstance justifying a blood test without a warrant in all DWI cases. 133 S. Ct. 1552, 1567–68 (2013) (5-4 opinion).

After *McNeely* was decided, the Supreme Court, on writ of certiorari, remanded a case to the San Antonio Court of Appeals "for further consideration in light of . . . *McNeely*." *Aviles v. Texas*, 134 S. Ct. 902, 902 (2014). In *Aviles*, the San Antonio Court of Appeals had upheld the admission of a blood specimen obtained without a warrant under section 724.012, which is referred to as a

8

mandatory-blood-draw statute. *Aviles v. State*, 385 S.W.3d 110, 115–16 (Tex. App.—San Antonio 2012, pet. ref'd). After the Supreme Court's remand, the San Antonio Court of Appeals determined that because the mandatory-blood-draw statute is not a proper exception to the warrant requirement and because the totality of the circumstances surrounding the warrantless seizure did not establish an exception to the warrant requirement, Aviles's Fourth Amendment rights were violated by the warrantless blood draw. *Aviles v. State*, No. 04-11-00877-CR, 2014 WL 3843756, at *2–3 (Tex. App.—San Antonio Aug. 6, 2014, pet. filed). The *Aviles* court on remand clearly held, however, that the mandatory-blood-draw statute could "be used for other purposes" other than to "create per se exceptions to the Fourth Amendment's warrant requirement"; thus, the *Aviles* court refused to conclude that the mandatory-blood-draw statute was unconstitutional. *Id.* at *2 n.2; *see also McGruder v. State*, No. 10-13-00109-CR, 2014 WL 3973089, at *3–4 (Tex. App.—Waco Aug. 14, 2014, no pet. h.) (declining to hold mandatory-blood-draw statute facially unconstitutional). Indeed, a plurality of the Court in *McNeely* recognized that Texas's mandatory-blood-draw statute is a restriction "on when police officers may obtain a blood sample despite a suspect's refusal." *McNeely*, 133 S. Ct. at 1566 & n.9.

The Texas courts of appeals have grappled with the import of *McNeely*. The majority of the courts that have addressed the issue have concluded that the mandatory-blood-draw statute in conjunction with the implied-consent statute contained in section 724.011 are not exceptions to the warrant requirement; thus,

9

any warrantless blood draw must be based on a well-recognized exception to the warrant requirement. *See generally Gentry v. State*, No. 12-13-00168-CR, 2014 WL 4215544, at *3–4 (Tex. App.—Tyler Aug. 27, 2014, no pet. h.) (mem. op., not designated for publication) (collecting cases from San Antonio, Amarillo, Eastland, and Corpus Christi Courts of Appeals and concluding that mandatory-blood-draw and implied-consent statutes are not exceptions to the warrant requirement); *Reeder v. State*, 428 S.W.3d 924, 930 (Tex. App.—Texarkana 2014, pet. granted) (relying on decisions by Amarillo and Corpus Christi Courts of Appeals to conclude that mandatory-blood-draw statute is not an exception to the warrant requirement). However, one court concluded that proof of compliance with the procedural requirements of the mandatory-blood-draw statute was sufficient to imply an arrestee's consent to a warrantless blood draw, dispensing with the warrant requirement. *Perez v. State*, No. 01-12-01001-CR, 2014 WL 943126, at *6–7 (Tex. App.—Houston [1st Dist.] Mar. 11, 2014, no pet. h.).

In sum, the import of *McNeely* on Texas's mandatory-blood-draw and implied-consent statutes was unsettled at the time of Bernal's trial and remains unsettled today. As we previously discussed, *McNeely* did not address directly the effect of mandatory-blood-draw or implied-consent statutes on the warrant requirement. The *McNeely* Court merely concluded that natural alcohol dissipation cannot be considered a per se exigent circumstance justifying a warrantless seizure of a blood specimen in all DWI cases. 133 S. Ct. at 1567–68. Indeed, the debate the Texas appellate courts are now faced with regarding

10

the mandatory-blood-draw statute, the implied-consent statute, and their interplay with the warrant requirement of the Fourth Amendment did not arise fully until the Court remanded *Aviles* on January 13, 2014, which was after Bernal's trial.

Absent a record in this case explaining counsel's reasoning for failing to move to suppress the blood-alcohol evidence on the basis of *McNeely*, we may not conclude that counsel was constitutionally deficient. Indeed, Wiginton never asserted that the natural dissipation of alcohol was an exigent circumstance that he relied on to dispense with the warrant requirement; thus, trial counsel could have concluded that *McNeely* did not apply to the admission of Bernal's blood specimen. *See, e.g.*, *State v. Bennett*, 415 S.W.3d 867, 869 (Tex. Crim. App. 2013) ("[W]e have repeatedly declined to find counsel ineffective for failing to take a specific action on an unsettled issue."). But any attempt to justify or condemn trial counsel's inaction on the basis of *McNeely* in the absence of a record on this issue is a prohibited exercise.[6] *See, e.g.*, *Kennedy v. State*, 402 S.W.3d 796, 798 (Tex. App.—Fort Worth 2013, pet. ref'd), *petition for cert. filed*, (U.S. June 9, 2014) (No. 13-10784). Accordingly, Bernal has not met his burden to show that his trial counsel's conduct was not the result of a sound trial strategy and, therefore, deficient. *See Davis v. State*, 930 S.W.2d 765, 769 (Tex. App.—

---

[6]In fact, two of the cases Bernal cites to support his deficient-performance argument note that trial counsel testified to the reasons behind his or her challenged decision at post-trial evidentiary hearings. *Ex parte Menchaca*, 854 S.W.2d 128, 131 (Tex. Crim. App. 1993); *Trinh v. State*, 974 S.W.2d 872, 876 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

Houston [1st Dist.] 1996, pet. ref'd). Further, counsel's actions or inactions were not so outrageous that the lack of a record to explain counsel's decisions is overlooked. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). We overrule Bernal's first issue.

### C. FAILURE TO SEEK TO SUPPRESS EVIDENCE OR REQUEST JURY INSTRUCTION REGARDING LACK OF REASONABLE SUSPICION

In his second and third issues, Bernal argues that trial counsel was constitutionally ineffective for failing to file a motion to suppress or request a jury-charge instruction allowing the jury to disregard the blood-alcohol evidence based on Wiginton's lack of reasonable suspicion to initiate the stop. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005). Reasonable suspicion arises if an officer has specific, articulable facts that, combined with rational inferences from those facts, would lead the officer reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011).

Based on the facts previously recited, Wiginton had reasonable suspicion to stop Bernal. Wiginton saw Bernal commit two traffic offenses: failure to signal a turn at least 100 feet before the intended turn and impeding traffic. Additionally, Bernal was driving in the area of three bars shortly after closing time at 1:00 a.m. These circumstances, considered in totality, provided the requisite reasonable suspicion to justify Wiginton's stop of Bernal. *See, e.g.*, *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) ("[T]ime of day is a relevant

12

factor in determining reasonable suspicion. . . . Similarly, . . . location near a bar district where police have made numerous DWI arrests is also a relevant factor in determining reasonable suspicion."); *Kelly v. State*, 413 S.W.3d 164, 171 (Tex. App.—Beaumont 2013, no pet.) (holding officer had reasonable suspicion to stop defendant's truck after officer saw defendant fail to use turn signal at least 100 feet from intended turn); *Prejean v. State*, No. 02-10-00316-CR, 2011 WL 856901, at *3 (Tex. App.—Fort Worth Mar. 10, 2011, no pet.) (mem. op., not designated for publication) ("Thus, an officer may stop a driver based on a reasonable suspicion of DWI even when the driver has not violated a traffic law and has not endangered other drivers."). Accordingly, trial counsel cannot be found deficient for failing to file a motion to suppress based on a lack of reasonable suspicion. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (holding counsel cannot be held ineffective unless there is a showing that motion to suppress had merit and ruling would have changed the outcome of the case). Additionally, the lack of a record regarding counsel's strategic choices bars any finding of deficiency and the failure to file a motion to suppress is not so egregious that we may overlook the absence of a record. *See Crocker v. State*, No. 01-11-00095-CR, 2013 WL 269122, at *5 (Tex. App.—Houston [1st Dist.] Jan. 24, 2013, pet. ref'd) ("When the record is silent about why counsel chose not to move to suppress a witness's identification, an appellant cannot meet the first prong of the *Strickland* test."). We overrule issue two.

Bernal was entitled to an instruction under article 38.23(a) only if the record demonstrated a factual dispute concerning how the evidence was obtained. *See Wesbrook v. State*, 29 S.W.3d 103, 121 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). Bernal has not identified any specific factual disputes surrounding Wiginton's initial stop of Bernal; therefore, Bernal was not entitled to such an instruction. Further, trial counsel has not been given the opportunity to explain why she chose not to request an instruction under article 38.23(a), and such a failure is not so outrageous to excuse the lack of an explanatory record. *See Goodspeed*, 187 S.W.3d at 392. We cannot conclude that trial counsel was deficient for failing to request a jury instruction under article 38.23(a). *See Hardin v. State*, 951 S.W.2d 208, 211 (Tex. App.—Houston [14th Dist.] 1997, no pet.). We overrule issue three.

## III. CONCLUSION

Bernal was not entitled to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Although trial counsel's choice not to seek to suppress or otherwise shield the jury from the blood-alcohol evidence under *McNeely* raises the possibility of deficient performance, this possibility arises only with the benefit of hindsight and merely invites this court to engage in impermissible speculation. *See Mata*, 226 S.W.3d at 430–31. The absence of any record to explain trial counsel's actions is fatal to Bernal's claims of ineffective assistance of counsel. *See, e.g., Jackson v. State*, 877 S.W.2d

14

768, 771 (Tex. Crim. App. 1994). Therefore, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 9, 2014