**MADISONVILLE CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, Appellant;**

**v.**

**TEXAS EMPLOYMENT COMMISSION and Jimmie D. Russell, Appellees.**

No. 13–91–023–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 21, 1991.

Rehearing Overruled Jan. 16, 1992.

L. Ann Goodlet, Eric W. Schulze, Austin, for appellant.

Dan Morales, Atty. Gen., Bill Kimbrough, Harriet D. Burke, Asst. Attys. Gen., Will Pryor, First Asst. Atty. Gen., Mary F. Keller, Exec. Asst. Atty. Gen., Austin, for appellees.

Before NYE, C.J., and DORSEY and GILBERTO HINOJOSA, JJ.

OPINION

DORSEY, Justice.

Madisonville Independent School District appeals from a trial court judgment upholding unemployment benefits awarded to Jimmie Russell by the Texas Employment Commission following Russell's termination as a teacher.

Madisonville employed Russell under a term contract for the 1987–88 school year. On March 15, 1988, Madisonville sent Russell statutorily required "notice of proposed nonrenewal" of his contract for the coming year.[1] However, before Madisonville made a final decision whether or not to renew Russell's contract, he submitted his resignation on March 28, 1988. Madisonville accepted the resignation and took no further action.

Russell then sought and was awarded unemployment benefits by the Texas Em-

---

1. *See* Tex.Educ.Code Ann. § 21.204 (Vernon 1987).

ployment Commission, which concluded that Russell was essentially given the option by his school board of either resigning or being discharged, and that he was not disqualified from receiving unemployment benefits. Madisonville brought the present action to challenge this award on the ground that Russell was disqualified from receiving benefits because he had voluntarily resigned.[2] The court below upheld the decision of the Commission awarding benefits. Madisonville raises three points of error complaining that Russell was disqualified as a matter of law from receiving benefits and one point complaining that the trial court erred in failing to make findings of fact and conclusions of law. We affirm.

Russell had been the Madisonville Independent School District band director for five years before his termination. Russell testified at trial that over the years he had received numerous complaints from the Madisonville High School principal, Earl Parker, over such things as funding of the band program, parent relations and uniform maintenance. Parker, as Russell's immediate supervisor, had initially recommended his nonrenewal to the school superintendent, who then recommended nonrenewal to the school board. The notice of proposed nonrenewal sent to Russell listed a number of specific complaints against him asserted generally as failure to fulfill duties and responsibilities, incompetency or inefficiency, and failure to maintain an effective working relationship with parents, the community and colleagues.

Shortly after receiving notice of the proposed nonrenewal, Russell approached the president of the school board, James Fraley, who knew Russell as a friend and from church. Fraley testified that Russell had approached him after church about the proposed nonrenewal, and that Fraley stated simply that Russell knew who his friends were on the board and that he should do what he felt that he had to. Fraley further testified that he had been on the board for five years, that the board usually went along with the school superintendent's recommendations about the day-to-day opera-

tions of the school, and that the superintendent had never recommended nonrenewal before recommending Russell's nonrenewal. Russell testified that the feeling he got from Fraley was that, because he did not have many friends on the board, his contract would not be renewed, regardless of what Russell might do.

The trial court entered judgment upholding the decision of the Commission and denying relief to Madisonville.

By its first, second and third points of error, Madisonville contends that substantial evidence did not support the Commission's decision that Russell was discharged, but that, as a matter of law, he voluntarily resigned without good cause connected with his work.

A decision of the Texas Employment Commission may be judicially reviewed by trial de novo to determine whether there is substantial evidence to support it. *See* Tex.Rev.Civ.Stat.Ann. art. 5221b–4(i) (Vernon Supp.1991). The party challenging the decision has the burden of proof, and the trial court must look to the evidence presented in trial to determine whether there is substantial evidence to support the decision. The trial court may set aside the TEC's decision only if that decision was made without regard to the law or the facts and therefore was unreasonable, arbitrary or capricious. *Mercer v. Ross*, 701 S.W.2d 830 (Tex.1986); *Texas Employment Commission v. Torres*, 804 S.W.2d 213 (Tex.App.—Corpus Christi 1991, no writ); *Texas Employment Commission v. Torvik*, 797 S.W.2d 195 (Tex.App.—Corpus Christi 1990, no writ).

In the present case, the question is if Russell's resignation bans him from benefits. The issue before us is whether there was substantial evidence before the trial court that Russell's resignation was not without good cause. The evidence of good cause relied on is that Russell was going to be fired, i.e., not renewed, if he did not first resign.

■ The unemployment compensation law is remedial in nature and should be

construed liberally to give effect to its beneficent purposes. *Meggs v. Texas Unemployment Compensation Commission*, 234 S.W.2d 453 (Tex.Civ.App.—Fort Worth 1950, writ ref'd). The purpose of the Texas Unemployment Compensation Act is to provide compensation to those who become unemployed through no fault of their own. The Act generally establishes a right to compensation to one who is discharged for reasons other than misconduct. *DeLeon v. Texas Employment Commission*, 529 S.W.2d 268, 270 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); Tex.Rev.Civ. Stat.Ann. art. 5221b–3(b) (Vernon Supp. 1991).

Under the provisions of article 5221b–3, however, an individual otherwise eligible for benefits may be disqualified for a number of different reasons found by the TEC, including "that he has left his last work voluntarily without good cause connected with his work." Tex.Rev.Civ.Stat.Ann. art. 5221b–3(a) (Vernon Supp.1991). The statute further provides that, "[t]his Section does not disqualify a claimant whose work-related reason for separation from employment was urgent, compelling, and of a necessitous nature so as to make separation involuntary." Tex.Rev.Civ.Stat.Ann. art. 5221b–3(i) (Vernon Supp.1991).

Both subsections look beyond the mere fact that the employee left work or quit rather than being discharged, in determining whether benefits should be denied. Subsection (a) suggests that, even if the employee's termination is considered "voluntary," he is not disqualified if he had "good cause connected with his work" for leaving. In other words, voluntarily quitting may be justified by the circumstances at work. Similarly, subsection (i) suggests that the mere fact that an employee quits is not itself conclusive that he left work voluntarily, but that some circumstances may be of such an urgent, compelling and necessitous nature that the termination itself should be considered involuntary. However, in deciding whether or not an employee is disqualified under the statute, it does not matter whether the termination is characterized either as voluntarily leaving for good cause connected with work, or

as an effectively involuntary separation. The result under either analysis is the same: that the circumstances at work may justify an employee in quitting, without forfeiting unemployment benefits.

Few cases in Texas have outlined the range of circumstances that may justify what otherwise appears to be a voluntary leaving, being designated as either involuntary or for good cause connected with work. In *Texas Employment Commission v. Huey*, 161 Tex. 500, 342 S.W.2d 544 (1961), the employer had a union contract under which it shut down operations between its summer and fall seasons. The agreement provided for paid vacation to union employees with seniority, but those without seniority were merely laid off without pay. With regard to laid-off employees who sought unemployment benefits, the TEC denied their claims on the ground that, because they had through their union agreed to this arrangement, they had left work voluntarily without good cause connected with work. The Texas Supreme Court, however, concluded that the employees did not leave work voluntarily without good cause connected with work, but that they remained ready, willing and able to work, with the shutdowns being for the benefit of their employer. Thus, the Court held that the employees should not have been disqualified from benefits.

In *Redd v. Texas Employment Commission*, 431 S.W.2d 16 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n.r.e.), the employer had a mandatory retirement policy and pension plan which the employee complied with by retiring at the specified age of 65, even though she was ready, willing and able to continue employment. The *Redd* Court held that the undisputed evidence did not justify the TEC's decision that the employee "left her last work voluntarily without good cause connected with her work." *Id.* at 23; *see also Texaco Inc. v. Texas Employment Commission*, 508 S.W.2d 957 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd).

In *Texas Employment Commission v. Gulf States Utilities Co.*, 410 S.W.2d 322 (Tex.Civ.App.—Eastland 1966, writ ref'd

n.r.e.), the employee understood it to be the policy of her employer that she was required to quit work at the fifth month of pregnancy. She quit in accordance with this policy even though she was able to continue and did not want to quit. The Court held that there was no evidence to show that she "left voluntarily without good cause connected with her work." *Id.* at 325.

In *Huey, Redd* and *Gulf States,* even though the employees ostensibly initiated or agreed to their termination or suspension, it was not because they wanted to quit work, but because they felt compelled to quit in order to satisfy the needs or policies of their employers. The question in the present case is whether knowledge of an impending discharge, or nonrenewal of a short-term employment contract, is a circumstance that may justify an employee in quitting, without forfeiting unemployment benefits.

Under the general principle that one who is unemployed through no fault of his own is entitled to unemployment benefits, if an employee is discharged for reasons other than misconduct he is generally not disqualified for benefits. *See DeLeon,* 529 S.W.2d at 270; Tex.Rev.Civ.Stat.Ann. art. 5221b–3(b) (Vernon Supp.1991). Under the reasoning of *Huey, Redd* and *Gulf States,* if that same employee is given an option by his employer of either resigning or being discharged, he should not be disqualified for benefits if he chooses to resign with dignity rather than to be discharged, provided that there is no evidence of misconduct that would otherwise bar him from benefits.

The employee's decision to save his business reputation by resigning under the threat of an impending discharge can certainly be characterized as either good cause connected with work for voluntarily leaving, or a work-related reason of a sufficiently urgent, necessitous and compelling

nature so as to make the termination involuntary. If the employee decides not to resign and is formally discharged, he must bear the mark of having been "fired" in all future attempts to secure employment.[3]

However, mere suspicion by the employee that he may be terminated sometime in the future is not sufficient to show either that a resignation is involuntary or good cause connected with work for leaving. To prevail on such a claim for benefits, the employee should have good reason to believe that he will imminently be discharged, or nonrenewed, unless he chooses to resign.

█ In the present case, the suggestion to Russell that he was in danger of being fired came in the form of a "notice of proposed nonrenewal," within the context of the Term Contract Nonrenewal Act, Tex. Educ.Code Ann. §§ 21.201–21.211 (Vernon 1987). This Act was specifically designed to give teachers certain procedural protections and due process rights when a school district decides not to renew the teacher's contract of employment. *See Central Education Agency v. George West Independent School District,* 783 S.W.2d 200, 202 (Tex.1989); *Seifert v. Lingleville Independent School District,* 692 S.W.2d 461, 462–63 (Tex.1985); *Salinas v. Central Education Agency,* 706 S.W.2d 791, 794 (Tex. App.—Austin 1986, writ ref'd).

Under section 21.203(c), each school board establishes its own procedures for receiving recommendations from the school administration for the nonrenewal of teacher term contracts. If the board accepts the administration's recommendation for nonrenewal, it must give the teacher written notice of the "proposed nonrenewal." *See* § 21.204(a). Within 10 days after receiving notice, the teacher may request a hearing. *See* § 21.205. The board may then terminate the teacher's contract within 15 days after either the hearing or the expiration of

---

3. We are aware of the competing interests of the parties in the characterization of the termination. It is in the employee's interest to have his termination seen as a resignation by potential future employers, but to be characterized as either involuntary or for good cause for purposes of collecting unemployment benefits. It is in the employer's interest, however, to have the termination characterized as a voluntary resignation without good cause, in order to disqualify the former employee from collecting benefits.

the period in which the teacher could have, but failed to, request a hearing. *See* § 21.-206.

After receiving notice of "proposed nonrenewal" and consulting Fraley about his options, Russell decided to resign at that point rather than to request a hearing. Madisonville suggests that, by failing to request a hearing, Russell waived any right to claim that he did not voluntarily resign. It directs our attention to the fact that, under the Term Contract Nonrenewal Act, teachers are entitled to notice and a hearing *before* the decision not to renew their contract is made by the board of trustees. *See Salinas v. Central Education Agency,* 706 S.W.2d 791, 794 (Tex. App.—Austin 1986, writ ref'd). Therefore, Madisonville argues that the school board's acceptance of a "proposed" nonrenewal under section 21.204 and the notice sent out in accordance therewith, merely amounts to the board's decision to "consider" nonrenewal and is not the equivalent of notice that the decision not to renew has already been made. *See Id.* at 794.

However, regardless of what connotations the statute may have intended the "proposed nonrenewal" to carry, each school district operating under that statute is a separate entity with its own unique characteristics. We cannot ignore the reality as Russell perceived it in the present case after talking to Fraley, that the Madisonville school board members would follow through on the recommendation of nonrenewal regardless of what he might do to change their minds. Moreover, Russell had no incentive to have his case heard by the school board if he thereby risked being formally discharged as a result. Instead, Russell chose to avoid being "fired" by resigning.

Thus, the evidence suggests that Russell had good reason to believe that he would imminently be discharged, that further appeals to the school board would be useless, and that this was his last chance to resign with dignity as opposed to being fired. Moreover, there is no contention that Russell's termination, or nonrenewal, was the result of his own misconduct. We hold

that there was substantial evidence to show that Russell did not leave his last work voluntarily without good cause connected with his work. The trial court correctly upheld the Commission's decision that Russell was not disqualified for benefits. Appellant's first, second and third points of error are overruled.

By its fourth point of error, Madisonville contends that the district court erred in failing to make findings of fact and conclusions of law. However, whether there is substantial evidence to support the Commission's decision is purely a question of law. *Texas Employment Commission v. Lewis,* 777 S.W.2d 817, 822 (Tex.App.—Fort Worth 1989, no writ); *DeLeon,* 529 S.W.2d at 270. Therefore, even if requested, the trial court need not and should not file findings of fact and conclusions of law following rendition of judgment in an administrative appeal. *Texas–New Mexico Power Co. v. Texas Industrial Energy Consumers,* 786 S.W.2d 795, 797 (Tex. App.—Austin 1990), *rev'd on other grounds,* 806 S.W.2d 230 (Tex.1991); *Lewis,* 777 S.W.2d at 822. Appellant's fourth point of error is overruled.

The judgment of the trial court is affirmed.