Joseph A. MURRAY, Appellant,

v.

TEXAS WORKFORCE COMMISSION and Comm South Companies, Appellees.

No. 05–03–00911–CV.

Court of Appeals of Texas, Dallas.

April 20, 2011.

Joseph A. Murray, Rowlett, for Appellant.

Brian S. Holk, Marla C. Reynolds, Lain, Faulkner & Co. PC, David Jefrie Mizgala, Greg C. Noschese, Munsch Hardt Kopf & Harr, P.C., Dallas, Seth Orman Smith, Asst. Atty. Gen., Austin, Anthony Aterno, Office of Atty. Gen., for Appellees.

Before Justices MORRIS, FRANCIS, and MURPHY.

## OPINION

Opinion By Justice MORRIS.

This is an appeal from the trial court's summary judgment affirming the Texas Workforce Commission's decision to deny Joseph A. Murray unemployment benefits. Murray raises six issues generally contending the TWC's decision was not supported by substantial evidence and he was denied due process of law before his termination. After reviewing the record on appeal, we conclude the summary judgment was proper. We affirm the trial court's judgment.

### I.

Joseph Murray was employed as a resource operations analyst by Comm South Companies. Comm South used a progressive disciplinary system to address absences and tardiness. On January 31, 2002, Murray signed an employee warning notice acknowledging and agreeing with the company's statement that he had accumulated a fourth tardiness violation on January 16, 2002 and a fifth violation on January 18. Murray also acknowledged that he had read and understood Comm South's warning that "any further tardy [sic] could lead to further disciplinary action and/or termination."

On February 21, Comm South issued Murray another warning notice regarding a tardiness violation on February 14. Murray again signed the notice agreeing with the company's statement that he had been tardy and that he had been informed that any further violations could lead to disciplinary action or termination. Rather than discipline or terminate Murray after his sixth violation, however, Murray's supervisor recommended that Murray change his work schedule to allow him "some cushion" in the time by which he was to report to work. Murray wrote on the warning notice that he had adjusted his morning schedule to allow him to arrive at work promptly.

On March 8, 2002, Murray was late returning from lunch. According to an affidavit signed by Brenda Gillard, the administrative services manager for Comm South, this incident exceeded the number of tardiness violations permitted under the company's disciplinary system. As a result, Murray was discharged from his employment with Comm South.

Murray applied for unemployment benefits, but his request was denied by the Texas Workforce Commission. In its written decision, the TWC stated that it found

that Murray had been fired for being late to work and that Murray understood he was required to be on time or to obtain an excuse for being late. In denying the benefits, the TWC relied on section 207.044 of the Texas Unemployment Compensation Act, which states that persons discharged for misconduct connected with their work are not eligible to receive benefits. Murray filed this suit against the TWC and Comm South seeking a judicial review of the TWC's decision.

The TWC and Comm South filed a joint motion for summary judgment arguing the TWC's decision was supported by substantial evidence. The defendants submitted summary judgment evidence including the signed warning notices, Murray's monthly attendance record, and Gillard's affidavit testimony. The trial court granted the defendants' motion for summary judgment. Murray brought this appeal.

## II.

■ A TWC decision regarding benefit payments carries a presumption of validity. See *Collingsworth Gen. Hosp. v. Hunnicutt,* 988 S.W.2d 706, 708 (Tex. 1998). The burden on the party challenging the TWC ruling is to show that it was not supported by substantial evidence. See *Direct Commc'ns, Inc. v. Lunsford,* 906 S.W.2d 537, 541 (Tex.App.-Dallas 1995, no writ). Whether the TWC's decision is supported by substantial evidence is a question of law. *Id.* In making this determination, we must decide whether the evidence is such that reasonable minds could not have reached the conclusion the administrative body must have reached to justify its actions. *Id.* The ruling may be set aside only if it was made without regard to the law or the facts and, therefore, was unreasonable, arbitrary, or capricious. See *Mercer v. Ross,* 701 S.W.2d 830, 831 (Tex.1986).

■ In his first, third, fourth, fifth, and sixth issues on appeal, Murray contends there is no substantial evidence to support the TWC's decision that he was not entitled to receive unemployment benefits because there is no evidence that he violated the company's attendance policy or committed misconduct. See TEX. LAB.CODE ANN. § 207.044 (West 2006). "Misconduct" is defined by the Texas Unemployment Compensation Act to include the "violation of a policy or rule adopted to ensure the orderly work and safety of employees." See *id.* § 201.012. An attendance policy is a policy "adopted to ensure the orderly work and safety of employees." See *Lairson v. Texas Emp't Comm'n,* 742 S.W.2d 99, 101 (Tex.App.-Fort Worth 1987, no writ). Violation of an attendance policy, therefore, may constitute misconduct. *Id.*

■ Murray argues the evidence does not support a finding that he violated Comm South's attendance policy because, according to Murray, the attendance policy allowed for twelve instances of tardiness in a twelve-month period and he did not exceed that number. Comm South concedes that its original attendance policy allowed for twelve instances of tardiness. The company submitted evidence, however, showing that it amended the policy to reduce the allowable number of tardiness violations to five. Comm South also submitted evidence showing that Murray acknowledged receiving the amendments over one year before he was fired. The form Murray signed on February 22, 2001 specifically states that he had received, read, and understood Comm South's then effective attendance policy. In addition, the evidence shows that Murray signed warning notices following his fifth and sixth tardiness violations stating that he understood that any further violations of the attendance policy could lead to his termination. This evidence is sufficient to

show that Murray violated Comm South's attendance policy and that he was aware of the policy before he committed the acts leading to the termination of his employment. *See Levelland Indep. Sch. Dist. v. Contreras,* 865 S.W.2d 474, 478 (Tex.App.-Amarillo 1993, writ denied).

■ Murray further argues that his tardiness did not affect his job performance and, therefore, cannot be considered misconduct. The statutory definition of "misconduct" requires only that the employee violate a rule or policy adopted to ensure orderly work or safety. There is no requirement that the employer show the violation negatively affected the employee's work. *See* TEX. LAB.CODE ANN. § 201.012. We decline to expand the definition of "misconduct" beyond the plain wording of the statute. *See Haas v. Texas Emp't Comm'n,* 683 S.W.2d 462, 465 (Tex.App.-Dallas 1984, no writ).

In addition, Murray contends his violation of the attendance policy should not be considered misconduct because the policy is unreasonable. *See Lairson,* 742 S.W.2d at 101. Murray argues the attendance policy does not take into consideration the "time constraints put on him by upper management for administrative duties" or that "he could be distracted at any time by calls from outsource call centers, managers and supervisors for various information." Murray fails to explain how these factors affected his ability to report for work on time or how they rendered the attendance policy unreasonable. Absent such an explanation, we conclude Murray's argument is without merit. *See id.*

Finally, Murray contends the evidence is insufficient because "some of the key documents submitted by the employer aren't signed or missing (sic) and the time sheet with the alleged tardy has the time hand written." Murray does not identify what "key documents" are missing. The only unsigned document he identifies is his Monthly Attendance Record for the month of January. The Monthly Attendance Record was signed by a representative of Comm South but not by Murray. Although Murray did not sign the attendance record, he does not dispute the two tardiness violations noted on the form. Furthermore, these are the same tardiness violations Murray acknowledged when he signed the employee warning notice on January 31, 2002.

The time sheet reflecting Murray's final tardiness violation has Murray's signature at the bottom. Although the violation is detailed in a handwritten notation that specifies the time Murray left for lunch and the time he returned, the printed portion of the sheet states that he took more than his allotted time for lunch. Additionally, Murray does not deny that this tardiness violation occurred. After reviewing the record, we conclude that the TWC's decision is supported by substantial evidence. We resolve Murray's first, third, fourth, fifth, and sixth issues against him.

In his second issue, Murray contends he was denied due process of law because Comm South failed to administer properly its own attendance policy and terminated him without proper notice. In making this argument, Murray again relies on his assertion that the company's attendance policy allowed twelve incidents of tardiness in a twelve-month period. As stated above, Comm South produced evidence that its policy was amended to reduce the allowable incidents of tardiness to no more than five. Comm South also produced evidence that Murray was aware of this change, that he was warned twice after his fifth tardiness violation of the possibility that he would be terminated if he incurred any further violations, and that the company allowed him to change his schedule in an attempt to help him avoid further violations. Murray makes no argument showing that he was prevented from receiving a

fair and impartial hearing in front of the TWC or that he did not receive adequate notice of the reason he was fired. ·See *Gonzales v. Texas Emp't Comm'n*, 653 S.W.2d 308, 310 (Tex.App.-San Antonio 1983, writ ref'd n.r.e.). We conclude Murray has not shown that he was denied procedural due process. We resolve Murray's second issue against him.

Based on the foregoing, we conclude that the TWC's decision was supported by substantial evidence and Murray was not denied due process of law. We affirm the trial court's judgment.