**AFFIRM and Opinion Filed March 12, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

## No. 05-11-01214-CV

---

### ROBERT L. HAMILTON, Appellant

### V.

### TEXAS WORKFORCE COMMISSION AND
### UNIVERSITY OF TEXAS AT DALLAS, Appellees

---

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 10-14225-K**

---

## MEMORANDUM OPINION

Before Justices Lang-Miers, Myers, and Lewis
Opinion by Justice Lang-Miers

Robert L. Hamilton appeals the trial court's summary judgment in favor of the Texas Workforce Commission and University of Texas at Dallas. Hamilton's claim for unemployment benefits was denied by the Commission, and he appealed to the district court. The parties filed competing motions for summary judgment. The trial court granted appellees' joint motion and denied Hamilton's. The court also denied Hamilton's motion for new trial. In three issues on appeal, Hamilton argues that (1) the Commission's decision is not supported by substantial evidence, (2) the Commission "engrafted an exhaustion requirement to undertake a company's internal appeals process" that violates his statutory and constitutional rights, and (3) the trial

court erred by granting appellees' motion for summary judgment and denying his motions for summary judgment and new trial. We affirm the trial court's judgment. The background of this case and the evidence adduced below are well known to the parties, and we limit our recitation of the facts. We issue this memorandum opinion pursuant to Texas Rule of Appellate Procedure 47.4 because the law to be applied in this case is well settled.

## Background

Hamilton was a systems analyst at UT-Dallas. Dr. Sue Ellen Taylor, Assistant Vice President of Information Resources, told Hamilton to meet her in her office at 8:30 am on June 29, 2009. At the meeting, Taylor gave Hamilton a two-page document entitled "Pre-disciplinary Notice: Intent to Terminate." The notice described several instances of Hamilton's misconduct[1] and advised him that Taylor intended to terminate his employment effective at 5:00 pm on June 30 (the next day) unless he responded to the notice and provided "compelling reasons" why Taylor should not terminate his employment. Hamilton told Taylor that he quit, and fifteen minutes after the meeting began, he handwrote a note and gave it to Taylor stating:

> 29 June 2008 [sic]
>
> UTD
> Richardson TX
> I quit
> /s/ R. L Hamilton
> <u>8:45 AM</u>

---

[1] The notice stated, among other things, that Hamilton had not met standards suitable and acceptable to the work environment and failed to comply with the standard procedure for notification about when he would be absent from the office. It also stated that he had been advised that he needed improvement in meeting due dates, increasing dependability, double-checking work, improving follow-through on assigned tasks, and improving his attitude regarding customer service, but explained how he had failed to improve in those areas.

Taylor accepted the note and Hamilton's statement that he quit by signing her name at the bottom of the note and dating it. Dana Smith, appellant's supervisor, was also present at the meeting and signed the note under Taylor's signature.

Hamilton sent an email to Taylor the next day at 9:14 am with the subject line, "Response to your notice." The email referred to a problem with the "Texas Grant report being late" and how he resented Taylor's insinuation that he was responsible. He also asked why he was not told "face to face" that "Users were having problems with me" so that he "could correct whatever [he] was doing wrong." He related his observation that when he could not get anyone to give him "access to the Orion system," it "finally became apparent that there was no intent for me to continue on to the new system and last month I started looking for another job in Education." And he also told Taylor about his "first day at UTD." He said the lady at the front desk never responded to him, the manager did not introduce him to anyone, no one (except two people) ever spoke to him, and he went home for lunch and was not going to go back until "a friend – a UTD alumna – stopped by and talked me in to coming back to work."

Hamilton was unable to find employment, and in March 2010 he filed for unemployment benefits. The Commission made a determination that Hamilton did not qualify for benefits because he voluntarily quit his employment without good cause connected with his work. Hamilton appealed the determination, and the appeal tribunal upheld the decision. Hamilton sued for judicial review. He alleged that the Commission's decision was wrong, arbitrary, capricious, unreasonable, and not supported by substantial evidence, and that it engrafted a requirement to follow UT-Dallas's internal appeal process.

Appellees filed a joint motion for summary judgment arguing that the Commission's decision was supported by substantial evidence. Hamilton also filed a motion for summary

judgment in which he argued that his note stating "I quit" did not alter the fact that UT-Dallas fired him, and there is no requirement that he exhaust UT-Dallas's internal grievance or appeal process before receiving unemployment benefits. The court granted appellees' motion and denied Hamilton's. Hamilton filed a motion for new trial arguing that the trial court relied on the wrong standard of review with regard to his claim about exhaustion of the internal appeal process. The court denied the motion.

On appeal, Hamilton argues that the Commission's decision was not supported by substantial evidence and that the trial court erred by granting appellees' and denying his motions for summary judgment.

## Standard of Review

We review a summary judgment de novo. *Lopez v. Tex. Workforce Comm'n*, No. 01-10-00849-CV, 2012 WL 4465197, at *3 (Tex. App.—Houston [1st Dist.] Sep. 27, 2012, no pet.) (mem. op.). When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both parties and determine all questions presented. *Id.*

Trial and appellate courts review the Commission's decisions about unemployment benefits de novo using the substantial evidence standard. *See* TEX. LAB. CODE ANN. § 61.062(e) (West 2006); *Dille v. Tex. Workforce Comm'n*, No. 05-11-01354-CV, 2012 WL 2454221, at *2–3 (Tex. App.—Dallas June 28, 2012, no pet.) (mem. op.); *see also Hooda Corp. v. Tex. Alcoholic Beverage Comm'n*, 370 S.W.3d 458, 461 (Tex. App.—Dallas 2012, no pet.). We presume the Commission's decision was valid, and the party seeking to set aside the decision has the burden

of showing that it was not supported by substantial evidence. *See Lopez*, 2012 WL 4465194, at *3; *Hooda*, 370 S.W.3d at 461. Substantial evidence is more than a scintilla and less than a preponderance. *Tex. Alcoholic Beverage Comm'n v. Cabanas*, 313 S.W.3d 927, 930 (Tex. App.—Dallas 2010, no pet.) (quoting *Garza v. Tex. Alcoholic Beverage Comm'n*, 138 S.W.3d 609, 613 (Tex. App.—Houston [14th Dist.] 2004, no pet.)). As a result, the evidence may actually preponderate against the decision of the Commission, but nevertheless satisfy the substantial evidence standard. *Id.* Whether substantial evidence supported the Commission's decision is a question of law. *See Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956–57 (Tex. 1984).

Under a substantial evidence review, the question we must decide is "whether the evidence introduced before the trial court shows facts in existence at the time of the [agency's] decision that reasonably support the decision." *Lopez*, 2012 WL 4465197, at *3 (quoting *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998)). We may not substitute our judgment for that of the Commission's on controverted issues of fact. *See Brinkmeyer*, 662 S.W. 2d at 956; *Cabanas*, 313 S.W.3d at 930. We may set aside the decision of the Commission only if it was made without regard to the law or the facts and, as a result, was unreasonable, arbitrary, or capricious. *See Collingsworth*, 988 S.W.2d at 708; *Murray v. Tex. Workforce Comm'n*, 337 S.W.3d 522, 524 (Tex. App.—Dallas 2011, no pet.). We compare the Commission's decision with the evidence presented to the trial court and the governing law. *Collingsworth*, 988 S.W.2d at 708. We will affirm if we conclude that the summary judgment evidence established as a matter of law that substantial evidence supported the Commission's decision. *Id.*

## Applicable Law

A person who leaves his last work voluntarily without good cause connected with the work is disqualified from receiving unemployment benefits. TEX. LAB. CODE ANN. § 207.045 (West 2006). "Good cause connected with the work" "means such cause, related to the work, as would cause a person who was genuinely interested in retaining work to nevertheless leave the job." TEX. WORKFORCE COMM'N APPEALS POLICY & PRECEDENT MANUAL, VL 210.00 Good Cause (Oct. 1, 1996), *available at* http://www.twc.state.tx.us/ui/appl/vl.pdf.

## Analysis

On appeal, Hamilton contends that the trial court erred by granting appellees' joint motion for summary judgment because the Commission's ruling was "arbitrary and capricious in light of [the Commission] and judicial precedent" and it "erect[ed] additional bars to the receipt of unemployment benefits that the Legislature has never established." Hamilton's contention is that he did not voluntarily leave his employment, he was fired.

Appellees' summary judgment evidence consisted of Taylor's affidavit, the notice of intent to terminate employment, UT-Dallas's policy on discipline and dismissal of certain employees, Hamilton's handwritten note, and the decision by the Commission's appeal tribunal. In their response to Hamilton's summary judgment motion, appellees also produced excerpts from Taylor's and Hamilton's depositions. Hamilton's summary judgment evidence consisted of these same documents, plus the email he sent Taylor and other documents produced by appellees in discovery.

The decision by the Commission showed that the appeal tribunal made the following factual findings: the employer presented Hamilton with a notice of intent to terminate his employment, the employer gave Hamilton until 5 pm the next day to respond to the notice and

6

provide evidence why the employer should not go forward with the proposed termination, the employer advised it would move forward with the termination if Hamilton failed to respond or provide compelling reasons why the employer should not terminate his position, Hamilton was to box his personal items in his work area and leave his office keys and identification until the matter had been finally decided, Hamilton would be reissued his keys and identification if the proposed termination was rescinded, Hamilton provided a handwritten note at 8:45 am stating that he quit, Hamilton did not intend to quit when he turned in the note because he believed he was already discharged, and Hamilton did not ask the employer to provide him with the information he needed to aid him with a response to the notice of intent to terminate.

The notice of intent to terminate stated that Hamilton had not met the work performance standards and standards of conduct expected of UT-Dallas employees, citing specific examples of misconduct, and stated that Taylor intended to terminate Hamilton's employment at 5:00 pm the next day. It also stated that UT-Dallas "policy calls for you to be notified of the intended action and provide you an opportunity to respond." The notice advised Hamilton not to report to work and to use his time to respond to the notice. It stated that if Hamilton failed to respond or provide compelling reasons why Taylor should not terminate his position, she would "move forward with the termination action . . . ." Although the notice stated that Hamilton should take his personal items from his work area and leave his keys and work identification, it also stated that he could bring the personal items back and the keys and identification would be reissued if the proposed termination was rescinded.

In her affidavit, Taylor stated that a final decision about Hamilton's continued employment had not been made as of June 29, 2009. She stated that she would have taken into consideration any response Hamilton made to the notice before a decision was made. She said

she told Hamilton in the meeting that she was not going to fire him at that time and "that this was a Pre-disciplinary Notice of Intent to Terminate Employment." She said Hamilton then made the statement that he quit. She said Hamilton's statement caught her "off guard," so she called a human resources representative who "instructed [her] to obtain a written and signed paper stating his (Dr. Hamilton's) decision to quit." She said Hamilton did not ask for access to any information that he might need to respond to the notice and did not ask for additional time in which to respond. She understood Hamilton's note "to mean that he had quit his job at UTD, effective immediately." In her deposition testimony, Taylor reiterated the above testimony and also stated that if Hamilton had presented evidence related to the specific items of misconduct in the notice, she would have considered them. She thought that Hamilton would have been on paid leave until a final decision was made.

Hamilton's summary judgment evidence did not dispute the way in which these events happened, but he argues that different conclusions should be drawn from the evidence. He argues that the Commission's decision was unreasonable and ignored the Commission's own precedent "that once an employer has expressed a clear intent to terminate the employee within a relatively short period of time, the employee's decision to resign immediately will still be viewed as caused by the employer's manifest intent to terminate him and will not be considered a voluntary departure from the job or change the nature of the separation from service[.]" He said he wrote the "I quit" note "not to signify my voluntary separation, since I had already been effectively discharged and my means of access to my work had already been taken away[,]" but "to express the practical inability to undertake the review process contained in the Notice to Terminate[.]"

Hamilton argues that the facts of his situation are like those in *Madisonville Consolidated Independent School District* and precludes the Commission from denying him unemployment

benefits. *See Madisonville Consol. Indep. Sch. Dist. v. Tex. Emp't Comm'n*, 821 S.W.2d 310 (Tex. App.—Corpus Christi 1991, writ denied). The Commission disagreed.

In that case, a school superintendent gave a teacher the "statutorily required 'notice of proposed nonrenewal' of his contract" for the coming school year. *Id.* at 310. The teacher talked to a friend who happened to be the president of the school board about the proposed nonrenewal. The teacher got the impression from his friend that his contract would not be renewed, regardless of what he did. *Id.* at 311. The friend testified at trial that the school board usually followed the school superintendent's recommendation, and the superintendent had never recommended nonrenewal before. *Id.* The teacher decided to tender his resignation because he believed the school board would follow the recommendation and any appeal would be useless. *Id.*

The Commission concluded that the teacher was not disqualified from receiving unemployment benefits. *Id.* at 310–11. The appellate court agreed and recognized that circumstances at work may cause an individual to voluntarily leave his employment but would not disqualify the individual from receiving unemployment benefits. *Id.* at 312–13 (giving examples that included union employees who were laid off without pay during a plant shutdown, an employer facing a mandatory retirement policy, and a pregnant employee whose company required her to quit work at the fifth month of pregnancy). The court concluded that if an "employee is given an option by his employer of either resigning or being discharged, he should not be disqualified for benefits if he chooses to resign with dignity rather than to be discharged, provided that there is no evidence of misconduct that would otherwise bar him from benefits." *Id.* at 313–14. The court cautioned, however, that "the employee should have good reason to believe that he will imminently be discharged, or nonrenewed, unless he chooses to resign." *Id.* at 313.

In Hamilton's case, the Commission acknowledged the *Madisonville* case, but distinguished Hamilton's situation:

> In the present case, the employer did not provide the claimant with a notice of his discharge on June 29, 2009, but a notice of intent to terminate his employment with the claimant being provided until 5:00 p.m. on June 30, 2009 to respond to the notice to provide evidence why the employer should not go forward with the proposed termination. As such, the claimant's providing a handwritten note outlining that he quit within 15 minutes of being advised of the proposed termination constituted a voluntary separation and not a discharge in accordance with the Texas Workforce Commission policy cited above. Since the claimant provided the note outlining that he quit because he believed he was already discharged and not because he believed that it was unlikely that the employer would rescind the proposed action to terminate his employment, this case can be distinguished from the Madisonville case cited above.

The Commission also concluded that it was Hamilton's responsibility to ask for any information he needed to respond to the notice, but that he did not ask for the information.

In summary, the parties' summary judgment evidence showed that a final decision had not been made about Hamilton's employment and that Taylor would have reviewed anything Hamilton submitted in making the final decision. In other words, the evidence did not show that Hamilton would be fired if he did not resign. *See Madisonville*, 821 S.W.2d at 313. Instead, the evidence showed that Hamilton was given an opportunity to respond to the notice and he chose to quit rather than try to save his job. And Hamilton's email "response" sent to Taylor the next day complained about the work environment and did not address the specific complaints in the notice. Although Hamilton said he believed the notice discharged him, the evidence does not support that belief. Consequently, the Commission reasonably could have concluded that Hamilton left his employment without good cause connected with the work. *See* TEX. WORKFORCE COMM'N APPEALS POLICY & PRECEDENT MANUAL, VL 210.00 Good Cause.

Based on the summary judgment evidence presented below, we conclude that the trial court did not err by granting appellees' motion for summary judgment and denying Hamilton's

motion. We resolve issues one and three against appellant. Because the Commission did not base its decision on UT-Dallas's internal appeal process, we do not need to reach Hamilton's arguments in issue two.

## Conclusion

We affirm the trial court's judgment

ELIZABETH LANG-MIERS
JUSTICE

111214F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

ROBERT L. HAMILTON, Appellant

No. 05-11-01214-CV     V.

TEXAS WORKFORCE COMMISSION
AND UNIVERSITY OF TEXAS AT
DALLAS, Appellees

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 10-14225-K.
Opinion delivered by Justice Lang-Miers,
Justices Myers and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees Texas Workforce Commission and University of Texas at
Dallas recover their costs of this appeal from appellant Robert L. Hamilton.

Judgment entered this 12th day of March, 2013.

ELIZABETH LANG-MIERS
JUSTICE