In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00567-CV

_____

**LENA SAAVEDRA, Appellant**

**V.**

**TEXAS WORKFORCE COMMISSION AND THE WOODLANDS
ACADEMY PREPARATORY SCHOOL, Appellees**

**On Appeal from the 359th District Court
Montgomery County, Texas
Trial Cause No. 11-10-11289 CV**

**MEMORANDUM OPINION**

Lena Saavedra (Saavedra) appeals the trial court's judgment, affirming the

Texas Workforce Commission's (TWC) denial of Saavedra's claim for

unemployment benefits. We affirm.

Background Facts

Saavedra was employed as a math teacher at The Woodlands Academy

Preparatory School (Woodlands Prep) from August 20, 2007, until the close of the

2010 school year. On or about May 7, 2010, Kenneth West (West), the headmaster

1

at Woodlands Prep, gave Saavedra a performance review, and there was no indication in the review that her performance was unsatisfactory. Woodlands Prep also offered her a new contract in May of 2010.

Saavedra testified that she asked West if they could meet on May 25, 2010, to discuss the contract. At that meeting, Saavedra asked West if Woodlands Prep would pay her more money in the form of a stipend for the following year. West testified that Saavedra had a piece of paper at the meeting that had the number of minutes she had worked over the past three years and how many minutes she had been off, and that it was the first time he had ever seen that type of documentation. West also testified that he told Saavedra he would consider her request. West spoke to Saavedra's Department Supervisor, Karen Lilly (Lilly), about Saavedra's request.

West, Lilly, and Jolynn Buckingham (Buckingham), the Director of Admissions and Communications, met with Saavedra the next day on May 26, 2010. Saavedra testified that during the meeting, West discussed Saavedra's past performance, told her he reviewed her file and found past issues, and stated that she did not "seem to be happy here." Both Saavedra and West testified that West spoke to Saavedra in the meeting about prior issues. West testified at trial that they had prior problems with Saavedra regarding her workbook use, textbook

2

selections, and grading procedures, as well as her failure to follow the direction of the department chairperson. The testimony from West and Saavedra established that Saavedra became frustrated or upset and walked out of the meeting. As she was leaving the meeting, Saavedra stated that if she had another job she would quit her job at Woodlands Prep.

Buckingham followed Saavedra out of the meeting and asked her to apologize to West and to return to the meeting. Buckingham testified that Saavedra then stated West had something wrong with him and that he should apologize to Saavedra. Upon her later return to the meeting, Saavedra either asked West not to look at her because he would make her start crying again, or stated that she could not look at him. West testified that Lilly and Buckingham told him that Saavedra made disrespectful comments about him after the May 26, 2010 meeting. In an audio recording of Lilly's interview with the TWC, which was played at trial, Lilly stated that later in the day on May 26th, Saavedra made derogatory remarks about West's demeanor: "[Saavedra] said that [West] had beady eyes. And [West] had a smirk on his face. And that [Saavedra] was nervous sometimes teaching because she thought [West] was lurking in the hallways."

On June 10, 2010, Saavedra and West met again. West informed Saavedra it was not "going to work out" and her employment was terminated. West admitted

at trial that he never told Saavedra she was either insubordinate or disrespectful. He testified he told her that "this isn't going to work and you're not going to be able to work here anymore."

West testified that the president of the School Board advised him that Saavedra's contract offer was void because she requested a stipend or attempted to renegotiate the contract. Additionally, the school's handbook states that an employee may be terminated for "insubordination" to administrators. West further testified the Board told him that if Saavedra was being insubordinate he had their approval to terminate her employment. West also testified that Saavedra's disrespectful comments and behavior, her leaving the meeting and refusing to return, and her comments to Lilly and Buckingham about him constituted insubordination.

At the trial, Lilly testified that she did not think Saavedra was being insubordinate, which was defined by Saavedra's attorney as "refusing an order or direct order to do something[,]" in the meeting on May 26, 2010. Asked if Saavedra was disrespectful, or disobeyed any instructions, Buckingham also stated "no."

After her termination, Saavedra filed for unemployment benefits with the TWC. Woodlands Prep denied that Saavedra was entitled to unemployment

benefits. In the July 20, 2010 telephone statement taken by the TWC investigator, West stated that Saavedra was terminated for "insubordination," that Saavedra was insubordinate during a meeting, and that Saavedra said "she had never worked for someone like [West] . . . she walked out of the meeting without permission . . . we talked [sic] her unwillingness to follow the directives of head Math Dept. Karen Lilly. . . ." On July 27, 2010, the TWC denied her claim for unemployment benefits. Saavedra appealed that decision to the TWC Appeal Tribunal, and a hearing was held on September 23, 2010. Concluding there was insufficient evidence to support Woodland Prep's claim of insubordination, the TWC Appeal Tribunal reversed the prior TWC decision and awarded unemployment benefits to Saavedra.

Woodlands Prep then appealed that decision to the full TWC Commission. On January 12, 2011, the Commission reversed the Appeal Tribunal's ruling and denied Saavedra any benefits. The Commission determined that Saavedra was dismissed for misconduct under section 207.044 of the Texas Unemployment Compensation Act. Saavedra filed a motion for rehearing with the Commission, and a rehearing was held on August 9, 2011. On September 20, 2011, the Commission affirmed the January 12, 2011 ruling.

5

Pursuant to Chapter 212 of the Labor Code, Saavedra then filed a petition in the Montgomery County district court. She requested "judicial review" of the TWC's decision. *See* Tex. Lab. Code Ann. § 212.202 (West 2006). After a bench trial, the trial court entered a judgment affirming the decision of the TWC and finding that substantial evidence supported the TWC's decision. Saavedra appealed.

### Standard of Review

We exercise de novo review to determine if the trial court erred in its determination that there was substantial evidence to support the TWC decision. *See* Tex. Lab. Code Ann. § 212.202(a); *see also Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956-57 (Tex. 1984); *Blanchard v. Brazos Forest Products, L.P.*, 353 S.W.3d 569, 572 (Tex. App.—Fort Worth 2011, pet. denied). "Substantial evidence is more than a scintilla, but less than a preponderance of the evidence." *City of Houston v. Tippy*, 991 S.W.2d 330, 334 (Tex. App.—Houston [1st Dist.] 1999, no pet.). A TWC ruling is supported by substantial evidence when "the evidence introduced before the trial court shows facts in existence at the time of the TEC's decision that reasonably support the decision." *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998). Whether the TWC's decision is supported by substantial evidence is a

question of law. *Blanchard*, 353 S.W.3d at 573. If the TWC's decision is unreasonable, arbitrary, or capricious, it will be set aside. *Murray v. Tex. Workforce Comm'n*, 337 S.W.3d 522, 524 (Tex. App.—Dallas 2011, no pet.). A decision is unreasonable, arbitrary, or capricious if it is made without regard to the law or the facts. *Id.*

At the trial below and now on appeal, the findings of the TWC carry a presumption of validity which a reviewing court cannot ignore or disregard. *See Hunnicutt*, 988 S.W.2d at 708; *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986). The TWC is the primary finder of the facts, and the reviewing court may not substitute its judgment for the TWC's judgment on controverted fact issues. *Brinkmeyer*, 662 S.W.2d at 956; *Blanchard*, 353 S.W.3d at 572. In our review, we will look at the evidence presented to the trial court, not the agency record. *See Nuernberg v. Tex. Emp't Comm'n*, 858 S.W.2d 364, 365 (Tex. 1993).

Discussion

On appeal, Saavedra articulates three issues: whether her actions constitute misconduct under section 201.012 of the Texas Labor Code, whether substantial evidence supports the district court's decision to affirm the TWC's decision to deny her unemployment benefits, and whether the TWC's decision was made without reference to the facts and was unreasonable, arbitrary and capricious. All

three of her issues are subsumed in the following issue: whether there was substantial evidence to support the TWC's decision denying Saavedra unemployment benefits on the basis of misconduct.

Section 207.044(a) of the Texas Labor Code disqualifies an individual from receiving unemployment benefits if the person was discharged for "misconduct connected with the individual's last work." Tex. Lab. Code Ann. § 207.044(a) (West 2006). Section 201.012 of the Texas Labor Code defines "misconduct":

> (a) "Misconduct" means mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees.
> (b) The term "misconduct" does not include an act in response to an unconscionable act of an employer or superior.

Tex. Lab. Code Ann. § 201.012 (West 2006). Mismanagement requires "intent, or such a degree of carelessness as to evidence a disregard of the consequences, whether manifested through action or inaction." *Mercer*, 701 S.W.2d at 831.

At the trial below, the district court heard testimony from West, Saavedra, Lilly, and Buckingham, and each side introduced several exhibits,

8

including copies of items submitted to the Commission. In its January 12, 2011 ruling, the TWC found:

> Rather, the Commission concludes that the claimant's actions and comments on May 26, 2010 showed such contempt for the head of school's authority as to be insubordinate. The claimant thus mismanaged her position of employment by actions rising to the level of misconduct connected with the work.

At trial, the testimony from West and Saavedra established that prior to May 25, 2010, Woodland's Prep offered Saavedra a new contract for the 2010-2011 school year. She did not sign the contract, but instead asked for additional compensation to be included in the contract. As a result of her request for more compensation, West and Saavedra's immediate supervisor, Lilly, reviewed Saavedra's record and past performance. On May 26, 2010, West, Lilly, and Buckingham met with Saavedra about past problems, and Saavedra became upset, left the meeting, and made comments about West to Lilly and Buckingham. Saavedra's statement that she would quit the next day if she had another job, walking out of the meeting, and commenting negatively about West to Lilly provided substantial evidence to support the Commission's finding that Saavedra was disqualified from receiving benefits because of insubordination toward administrators, and that her actions constituted mismanagement rising to the level of misconduct. *See* Tex. Lab. Code Ann. §§ 201.012, 207.044(a); *see also*

9

*Blanchard*, 353 S.W.3d at 574 (holding that employee's conduct in ignoring customer complaint and engaging in "'rude and destructive behavior'" was substantial evidence of mismanagement); *Anderson v. Tex. Workforce Comm'n*, No. 05-02-01595-CV, 2003 Tex. App. LEXIS 4879 (Tex. App.—Dallas June 5, 2003, pet. denied) (mem. op.) (concluding that insubordination is misconduct).

Saavedra argues that the Commission erroneously denied her benefits. However, the issue on appeal is not whether the Commission reached the correct conclusion based upon what may be characterized as conflicting interpretations of the respective evidence, testimony, and meetings, but whether or not the administrative decision was reasonable. *Brinkmeyer*, 662 S.W.2d at 956. Saavedra argues that the Commission and the trial court erred in denying her benefits because her actions from May 26 to June 10, 2010, do not meet the statutory definition of "misconduct." In support of her argument, Saavedra cites to *Hunnicutt v. Texas Employee Commission*, 949 S.W.2d 52 (Tex. App.—Amarillo 1997), which was reversed by the Texas Supreme Court in *Collingsworth General Hospital v. Hunnicutt*, 988 S.W.2d 706 (Tex. 1998). She also cites to *Lohmuller v. Texas Workforce Commission*, No. 14-00-00008-CV, 2000 Tex. App. LEXIS 8497 (Tex. App.—Houston [14th Dist.] 2000, no pet.), a Fourteenth Court of Appeals decision holding that an employee's refusal to work was due to the employer's

10

"unconscionable act" of demanding that the employee work for a period of time without pay, and, therefore, the employee's conduct did not meet the definition of misconduct under section 201.012. *Lohmuller* is not applicable here. There is no evidence in the record that Woodlands Prep was trying to get Saavedra to work without pay or that the school was otherwise engaging in an illegal or unconscionable act by having her attend the meeting of May 26, 2010.

The evidence presented by Saavedra does not show that the TWC's decision was unreasonable, arbitrary, or capricious, nor does it conclusively negate all reasonable support for the TWC's decision. *See Murray*, 337 S.W.3d at 524; *City of Houston v. Morris*, 23 S.W.3d 505, 508 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Based on this record, we conclude the trial court properly held as a matter of law that substantial evidence supports the TWC's decision to deny benefits to Saavedra. All of Saavedra's issues are overruled. We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on April 24, 2014
Opinion Delivered June 12, 2014

Before McKeithen, C.J., Kreger and Johnson, JJ.

11